[Civ. No. 30281. Second Dist., Div. One. Dec. 13, 1966.]

EL MONTE UNION HIGH SCHOOL DISTRICT OF LOS ANGELES COUNTY, Plaintiff and Respondent, v. CONSUMERS HOLDING COMPANY, Defendant and Appellant.

**174**

Millikan, Montgomery, Franciscus & Olafson and Mortimer G. Franciscus for Defendant and Appellant.

Harold W. Kennedy, County Counsel, and Alfred Charles De Flon, Deputy County Counsel, for Plaintiff and Respondent.

LILLIE, J.—In this eminent domain proceeding the jury placed a valuation of $236,250 on the subject property, some 15 acres of land and several old residential buildings, although the owner's expert witness testified to a market value of more than twice such sum. Defendant owner has appealed, contending that this unusual disparity resulted from the trial court's ruling unduly restricting the cross-examination of respondent's expert witness concerning comparable sales relied on by him in making an earlier appraisal, which was prejudicial error.

At the time of trial (June of 1965) the property in suit was located in unincorporated territory adjacent to and westerly of the San Gabriel River—specifically, west of and about 500 feet south of the city limits of the City of Industry and easterly of the City of El Monte to which, it is represented, it was annexed in June of 1966. Since there was a reasonable probability of a zone change allowing industrial use of the property, each expert (one for each side) testified that a light industrial use of the property would be most profitable and therefore constitute its "highest and best use." Additionally, each expert testified to the particulars concerning sales of property considered comparable to that in suit and therefore reasonably indicative of the latter's value on the date of appraisal. Because appellant's expert, Mr. Brady, considered it a natural environmental boundary, he excluded all sales of properties lying east of the San Gabriel River and based his valuation ($493,000) on six sales of industrial properties to the west of the river. On the other hand, respondent's expert, Mr. Whittlesey, gave consideration to sales on both sides of the river; based thereon, he fixed the value of the subject property in the sum found by the jury to be just compensation for its taking.

As stated at the outset, Whittlesey had made an earlier appraisal report; he did so at respondent's request in July of 1963, some nine months before the instant action was commenced, and reported his opinion of the value of the property

to be $236,250. Prior to trial in June of 1965, respondent's counsel asked Whittlesey to up-date his appraisal as of the date that summons issued (April 3, 1964). Complying with such request, he determined the value of the property to be the same as that arrived at in the previous report which relied on seventeen sales of property and one lease—eighteen transactions in all; the 1965 report, in turn, was based on sixteen transactions, thirteen new sales discovered in his later survey and three additional transactions (two sales and one lease) he had previously found in the survey of 1963. Whittlesey on direct examination testified to the sixteen transactions last mentioned; he did not, however, testify to some thirteen sales upon which his 1963 appraisal relied. All appraisal reports having been furnished respective counsel pursuant to pretrial order, appellant sought to cross-examine Whittlesey as to his reasons for discarding sales not testified to by the witness although he originally considered them comparable—specifically, certain sales data used by him in formulating his 1963 appraisal but not made use of in his 1965 reappraisal of the property in suit. ▮▮▮ When counsel for appellant offered in evidence a map depicting properties that accompanied the 1963 appraisal, the court sustained respondent's objection to the document's admissibility for the reason that it was irrelevant and immaterial; the court stated, however, that appellant would be permitted through its own witnesses to adduce such excluded evidence. It is now claimed that the court erred in thus limiting such cross-examination, which claim renews the contention made by appellant's counsel at the trial: ''...I think the cases are uniform in allowing me a very wide latitude on cross-examination to test the witnesses [*sic*] investigation. I would like to know what sales he considered, where they are, and why he felt at least one time they were most comparable. I think the law allows me that privilege.''

Appellant never availed itself of the opportunity offered by the court to adduce the excluded testimony through its own witnesses, principally because of a statement by the court assertedly to the effect that Whittlesey had given a satisfactory reason for disregarding sales material previously considered comparable— ''...he [Whittlesey] says he has disregarded or hasn't employed these other pieces of property to determine market value. He found after his examination of his project as a whole it [i.e., the excluded sales data]

didn't aid him; ..." According to appellant, "This comment, of the Court's, made further questioning futile. ... Here, the trial judge had concluded that except for two sales to which he testified, Whittlesey hadn't adopted sales data used by him in his original appraisal and it follows that if the trial judge isn't concerned with the material in Whittlesey's appraisal report why should the jury worry about it?"

At the outset it should be pointed out that no inquiry was made on cross-examination of the sales prices of the properties listed in the 1963 appraisal but not used in the 1965 report; nor is the contention made by appellant that Whittlesey deleted high-priced sales previously relied on and subsequently substituted low-priced sales in his second appraisal. We are not, therefore, concerned with the rule that a witness may be impeached by prior inconsistent statements as to value: in this regard, "It has been held that a different opinion of the same witness about the same property may be brought out for impeachment purposes. [Citations.]" (*County of Contra Costa* v. *East Bay Municipal Dist.*, 175 Cal.App.2d 834, 836 [1 Cal.Rptr. 60].) To the same effect are *People* ex rel. *Dept. Pub. Wks.* v. *Murata*, 161 Cal.App.2d 360 [326 P.2d 947] and cases therein cited. Rather, and appellant so concedes, the area of cross-examination concerns matters of borderline relevance. In *People* ex rel. *Dept. Pub. Wks.* v. *Miller*, 231 Cal.App.2d 130, 134 [41 Cal.Rptr. 645], it is stated that "an inquiry directed to matters of borderline relevancy may be foreclosed in a civil case where the apparent purpose thereof is other than its claimed relevancy [citations]; where it has a tendency to divert the attention of the jury from the main issue [citations]; where it may cause confusion; where it raises collateral issues that should be avoided [citations]; or where its probative value is outweighed by its probable ulterior effect. [Citations]." Continuing, "The extent of cross-examination which tends to impeach the credibility of a witness rests very largely in the discretion of the trial court [citations]; and, absent a showing of abuse in the exercise of that discretion, its determination in the premises will not be interfered with on appeal. [Citation.]" (P. 134.) Finally, it is held in *People* v. *La Macchia*, 41 Cal.2d 738 [264 P.2d 15], that the curtailment of cross-examination to test credibility should not be considered improper if, in the exercise of a wide discretion, the court keeps it within reasonable bounds and care is used to not unduly prolong the length of a trial.

Appellant would have more standing at this stage of the proceedings if the relevance of his attempted cross-examination, admitted to be of the borderline variety, had been presented to the trial court—and not belatedly to this court. As shown above, the only support asserted below for the admissibility of the matters to be covered was the latitude ordinarily accorded the field of inquiry on cross-examination. Fairness to the trial court, enjoined with the duty of ascertaining the materiality of the proposed inquiry in line with the admonitions stated in *La Macchia* and *Miller, supra,* would have dictated another course, to wit, the specific purpose sought to be achieved thereby. McCormick on Evidence (1954), cited with approval in the leading case of *County of Los Angeles* v. *Faus,* 48 Cal.2d 672, 678 [312 P.2d 680], has this to say about the present problem: "... whether a witness be produced and questioned or whether the offer be made without the witness, a statement of the purport of the expected witness is required. The reason for the requirement is that the judge must be fairly informed of the basis for the proponent's claim of admissibility and the appellate court may understand the scope and effect of his ruling. To this end the statement must be reasonably specific, must state the purpose of the proof offered unless that is apparent, and where the offered facts suggest a question as to their materiality or competency the offer must show the facts on which relevancy or admissibility depends." (Pp. 113-114.)

Instead, for the first time on appeal the owner contends that the sales data used in Whittlesey's 1963 report would have supported the selection of comparative sales made by its own expert; also for the first time it is now urged that the evidence excluded would have tended to establish that Whittlesey's testimony was predicated upon a "make-weight" appraisal "resulting from a systematic elimination of sales occurring west of the river on a rising market and the substitution of data from transactions occurring east of the river in an area which was, as of the date of valuation, relatively unsaturated." We cannot understand why such theories (if sustainable) could not have been developed through appellant's own expert, particularly in view of the opportunity afforded, unless there is merit to the claim that the trial court's statement, previously quoted and assertedly approving Whittlesey's valuation techniques, amounted to unfair comment. The quoted remarks are not at all susceptible

of that sole construction—all that they did was paraphrase the reasons given for the witness's conclusions. But assuming, *arguendo*, that the quoted statement might have had an adverse effect on the jury, there was no request for a cautionary instruction nor did appellant object to the court's remarks. Having failed to do so, the point cannot be raised for the first time on appeal. (*Lund* v. *Pacific Elec. Ry. Co.*, 25 Cal.2d 287 [153 P.2d 705].)

Although never brought to the trial court's attention, we nevertheless consider the additional claims that the excluded evidence would have had the effect of supporting appellant's expert in his choice of comparable sales and would also have established that Whittlesey's testimony was predicated upon a "make-weight" appraisal by eliminating sales west of the river and substituting data from transactions occurring east of that asserted boundary line. Such claims are mere assumptions not borne out by the record. Thus, it appears that 39 percent of the sales supporting the 1963 report were west of the river, while west of the river sales listed in the 1965 report represented 18.7 percent of the total number relied on. This is no basis for concluding that respondent's expert systematically excluded from consideration sales of properties solely because of their location on one or the other side of the river; the same, however, cannot be said of appellant's expert who explicitly acknowledged exclusion of all properties lying east of the San Gabriel. It is in no wise suggested that respondent's expert fraudulently conceived and carried out his 1965 appraisal; and although an expert may be impeached upon proof of a prior valuation inconsistent with that given at the trial (*People* ex rel. *Dept. Pub. Wks.* v. *Murata, supra,* 161 Cal.App.2d 369 [326 P.2d 947]), no case has been called to our attention which holds that the same witness for impeachment purposes can be cross-examined as to the evidentiary basis for his prior statement of opinion. Appellant emphasizes the statement in *Murata* that " '[t]he value of the opinion evidence of a witness may be tested by showing that upon a former occasion he expressed a different opinion, or made statements inconsistent with the opinion expressed.' " (P. 379.) While admitting that the present matter is distinguishable, appellant insists that it is "similar in principle." We do not agree to the extent that a reversal is required. *People* v. *Union Machine Co.*, 133 Cal.App.2d 167 [284 P.2d 72], also relied on by appellant, must likewise be distinguished

because the questions on cross-examination went to the issue of value.

Under all the circumstances of this case we can find no error of a reversible character. ■ Unless the probative value of the offered evidence clearly outweighs the potential confusion caused by collateral issues, the trial court's discretion in determining its admissibility will not be interfered with. We repeat that appellant was not foreclosed from demonstrating through its own witness the validity of its claims; for reasons found by us to be unsupportable, it did not avail itself thereof.

The portion of the judgment appealed from is affirmed.

Wood, P. J., and Fourt, J., concurred.