[Civ. No. 47287. Second Dist., Div. Five. June 30, 1976.]

HARRY W. BRAINARD, Plaintiff and Appellant, v.
GEORGIA COTNER, Defendant and Respondent.

## COUNSEL

R. Edward Brown for Plaintiff and Appellant.

Butterworth & Waller and John L. Sims for Defendant and Respondent.

## OPINION

**HASTINGS, J.**—This is an appeal by plaintiff-appellant Harry W. Brainard (Brainard) from a judgment on a verdict in favor of defendant-respondent Georgia Cotner (Cotner).

### STATEMENT OF FACTS

On many of the material issues, the facts are in dispute. We begin by stating the facts that are undisputed, with a follow-up of the facts that are in dispute.

The undisputed facts: Brainard (an attorney at law), sometime between 6:30 and 6:45 p.m. on August 25, 1969, visited the Chimney-

sweep bar in the San Fernando Valley. He sat down at the bar next to Cotner and her friend Linda Stacey (now deceased and not a witness at the trial). The bartender introduced Brainard to Cotner,[1] and during the course of conversation, Brainard told Cotner that he was an attorney. The conversation then turned to the fact that Cotner was divorced and had had considerable trouble in collecting child support payments from her former husband. Both parties were drinking screwdrivers at the bar. At approximately 9 p.m., Brainard, Cotner and Stacey left the bar and Cotner drove them in her car to Stacey's apartment. They remained there for approximately an hour and 15 minutes. Brainard and Cotner, with Cotner driving, then headed back toward the Chimney-sweep bar. Their route took them westbound on the Ventura Freeway to the Woodman offramp, where Cotner brought the car to a stop at Woodman. She then made a left turn, going 15 to 20 miles per hour, and hit a signal light standard. Brainard was thrown through the windshield.

The disputed facts: Brainard, on direct testimony, stated that he had at most two drinks at the Chimneysweep bar. On cross-examination, he stated that it was possible that he had one other drink, but that he could not have had more than three. He first testified that Cotner had one drink when they went to the apartment. His deposition was then read into the record as follows:

"Q. How many drinks had you seen Mrs. Cotner consume during the time that you met her to the time of the accident?

"A. My best recollection is several at the Chimneysweep and several more at the home of her friend."

Brainard testified that he himself did not consume any alcoholic beverage at the apartment, but instead had a cup of coffee. Cotner testified that Brainard had a glass of wine at the apartment.

Cotner testified that, as she left the Woodman offramp to cross the street, the throttle of her car stuck and she bent over to jiggle it loose. That as she bent over, Brainard unzipped the top portion of her dress. This so surprised and infuriated her that she took her eyes off the road to look at Brainard. In her opinion, it was this incident that caused the accident. Brainard denied this testimony, stating that he has never touched Cotner at any time.

---

[1] There was some evidence that Brainard and Cotner had briefly met before.

Brainard testified that Cotner did not appear to be under the influence of alcohol when they left the Chimneysweep bar, nor when they left the apartment to return to the bar to pick up his car. He testified that the first time he noticed anything unusual about the way she was driving was when they came down the Woodman offramp and she appeared to be driving "in a little bit unsteady fashion." He asked her, "Do you feel all right?" and she responded, "Yes, I think so."

Prior to commencement of trial, and before the impaneling of the jury, Brainard stated in the judge's chambers that he desired to introduce into evidence two admissions made by Cotner. The first was that Brainard would testify that at the hospital Cotner stated: "Don't worry, my insurance will take care of it." The second statement arose out of a conversation between Brainard and Cotner and occurred after he saw the police report for the first time. The report contained Cotner's statement that Brainard had leaned over and zipped down the back of her dress. Brainard called Cotner to tell her this was an untrue statement. She is alleged to have responded: "Well, I did it because I was fearful of my insurance." The court excluded both statements under sections 352 and 1155 of the Evidence Code, stating: "The *Menefee* case [*Menefee* v. *Williams*, 259 Cal.App.2d 56 (66 Cal.Rptr. 108]] I think covers your first offer pretty much on the nose, and as far as the second offer is concerned, I think that the probative value is outweighed as previously stated and should be excluded for that reason."

## ISSUES ON APPEAL

Brainard raises two issues on appeal. Because we reverse for a new trial, we repeat only the pertinent issue, which is stated by Brainard as follows: Is it proper to introduce evidence showing motive on the part of a witness or which would impeach the credibility of that witness, even though it may thereby be disclosed that the defendant was protected by insurance?

## DISPOSITION

■ We agree with the trial court that the first statement "Don't worry, my insurance will take care of it" was not necessarily an admission of fault on the part of defendant; therefore, it was not an

abuse of discretion to exclude it.[2] (See *Menefee* v. *Williams, supra,* p. 61.) ▉ The second statement, however, if admitted for the reasons stated *infra,* could have resulted in a different verdict. The trial court excluded it under Evidence Code section 352.[3] ▉ Under this section the probative value of the offered evidence must clearly outweigh the prejudice it might cause (in this case, notice to the jury that Cotner was insured). ▉ If such probative value is absent, this court will not interfere with the trial court's determination. (*El Monte Union High Sch. Dist.* v. *Consumers Holding Co.,* 247 Cal.App.2d 173, 179 [55 Cal.Rptr. 467].) Trial courts, for obvious reasons, have generally kept evidence from the jury that a defendant had insurance coverage on the involved liability.[4] ▉ However, every rule has its exceptions and " '[f]acts tending to show interest, bias or motive on the part of a witness may always be brought out on cross-examination even though it may thereby be disclosed that the defendant was protected by insurance.' " (*Hart* v. *Wielt,* 4 Cal.App.3d 224, 231 [84 Cal.Rptr. 220]; *Moniz* v. *Bettencourt,* 24 Cal.App.2d 718, 724 [76 P.2d 535].) ▉ The probative value of Cotner's statement "[w]ell, I did it because I was fearful of my insurance" is substantial. Cotner and Brainard were the only percipient witnesses to the cause of the accident. Cotner's testimony that the accident was caused by Brainard's unzipping her dress while she was bent over in an attempt to release a stuck throttle, whether true or not, is devastating. Brainard should not be denied evidence that would rebut this damaging testimony. Furthermore, the circumstances leading up to Cotner's statement are plausible. Brainard alleges he did not know Cotner was claiming he unzipped her dress, thus causing the accident, until he read the accident report. He reacted normally (and probably indignantly) and called her for an explanation. A jury could conclude from Cotner's statement that she had fabricated the cause of the accident. We agree with Brainard that, had she said "I was fearful of my

---

[2]We anticipate that on retrial Brainard will again seek admission of this statement. In view of the fact that Cotner's other statement will now be admissible we see no reason for excluding it. Standing alone its probative value is questionable. If considered with the other statement, its importance could be significant. Similar statements have been admitted in other cases. (See *Galbraith* v. *Thompson,* 108 Cal.App.2d 617, 623 [239 P.2d 468]; *Kroplin* v. *Huston,* 79 Cal.App.2d 332, 339 [179 P.2d 575]; and *Freeman* v. *Nickerson,* 77 Cal.App.2d 40, 56-58 [174 P.2d 688].)

[3]Evidence Code section 352 provides as follows: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

[4]Evidence Code section 1155 provides as follows: "Evidence that a person was, at the time a harm was suffered by another, insured wholly or partially against loss arising from liability for that harm is inadmissible to prove negligence or other wrongdoing."

driver's license," this statement undoubtedly would have been admitted.[5] ■ The discretion granted the trial court by section 352 is not absolute (see *Thor* v. *Boska,* 38 Cal.App.3d 558, 567 [113 Cal.Rptr. 296]; *People* v. *Mascarenas,* 21 Cal.App.3d 660, 667 [98 Cal.Rptr. 728]) and must be exercised reasonably in accord with the facts before the court. (See *Mascarenas, supra,* at p. 667.) ■ For the reasons stated, we conclude there was an abuse of discretion in not admitting Cotner's statement.

The judgment is reversed.

Kaus, P. J., and Ashby, J., concurred.

---

[5]We add a caveat to this opinion to suggest to the trial courts that some statements containing reference to insurance (or other offensive words) can be edited and the prejudicial words eliminated without destroying the probative value of the remark. If the parties agree to the editing, it would help in reducing appeals filed solely for this alleged error. We agree in this case, however, that any editing would destroy the impact of the statement.