[No. B079383. Second Dist., Div. Four. Sept. 20, 1996.]

DEBORAH KELLY, Plaintiff and Appellant, v.
NEW WEST FEDERAL SAVINGS et al., Defendants and Respondents.

**COUNSEL**

Walter L. Gordon III for Plaintiff and Appellant.

Musick, Peeler & Garrett, Steven J. Elie, Paul D. Hesse, James M. Shields, Edna V. Wenning, Dummit, Faber & Briegleb, Ann L. Holiday and Jeffry A. Miller for Defendants and Respondents.

---

**OPINION**

**HASTING, J.**—This case demonstrates misuse and abuse of motions *in limine* which resulted in denial of due process for plaintiffs in a personal injury action. We reverse and remand to the trial court.

FACTS[1]

A. *Background*:

On January 6, 1989, plaintiffs Deborah Kelly and Beverly Caradine were riding on an elevator located at the Hillcrest Medical Center in Inglewood, California.[2] The elevator allegedly "misleveled," that is, in this case, it stopped some distance above the level of the floor upon which plaintiffs wished to exit. Plaintiffs fell and injured themselves upon leaving the elevator.

Plaintiffs filed suit against New West Federal Savings and American Savings and Loan (collectively New West), successors in ownership of the Hillcrest Medical Center; Auerbach Leasing and Management (Auerbach), the management company responsible for managing the building; and Amtech Reliable Elevator (Amtech), the company that maintained the elevators on the premises of the building (collectively referred to as respondents).

Discovery was undertaken by all parties and quickly the focus became which of the two elevators in the building plaintiffs had been using on the date of the accident. The elevators were located next to each other. One elevator was designed for handicapped access and was larger than the other elevator; as a result the parties and witnesses distinguished between the two by using the terms "large" and "small" elevator.

Plaintiff Kelly had worked for five years in the building and gave testimony on two separate occasions relative to the incident. At her first

---

[1]Because this is an appeal after grant of motions *in limine* and a brief opening statement, the facts are taken from the transcript relating to the motions *in limine* and the opening statement. They are treated basically as offers of proof by this court.

[2]Plaintiff Beverly Caradine is not a party to this appeal.

deposition she testified as follows: "Q. Now, for the incident where you fell, was that also for the smaller elevator, or was that the handicapped elevator. [¶] A. The smaller elevator." At the second session of her deposition she testified as follows: "Q. Okay. And we're talking about prior incidences with the elevator, and I just wanted to clarify that your incident occurred in the small elevator; isn't that true? [¶] A. Yes. I was trying to just to visualize the larger one on the right, which I believe— [¶] Q. As you're facing it? [¶] A. Yes, as I'm facing both elevator doors, and it was on our right. The larger one is on the left. [¶] Q. Okay. [¶] . . . [¶] Q. Is it your testimony, then, that your prior experiences with the elevator misleveling occurred in the same elevator that you had your falling incident in? [¶] A. To my recollection, it appears that they both always had problems, doors sticking, the slight little maybe one inch going a little bit past the floors for instances, which I just described, but they both had problems, and I just have no idea and no way of remembering which one did which at any given time." Later, she stated: "Q. And your incident involved the small elevator; is that correct? [¶] A. Correct."

Plaintiff Caradine testified at her deposition that she was unable to recall which elevator was involved in the incident.

The case was ordered to arbitration on May 19, 1992. Arbitration was originally scheduled for late in September but was continued to October 21, 1992.

On June 12, 1992, the deposition of David Crumley, an employee of Amtech, was taken. At that deposition plaintiffs' counsel learned that Amtech had gone to the building on the date of the accident to work on the large elevator, which was misleveling. Amtech also returned to the building seven days later to do major repairs on the large elevator. At this deposition plaintiffs' counsel became concerned that the accident may have occurred on the large elevator and he so advised counsel for respondents.

On September 25, 1992, plaintiffs' counsel wrote a letter to counsel for Amtech advising her that the large elevator was at issue in the case.

On October 19, 1992, plaintiffs filed a motion for further discovery which was scheduled for hearing on November 10, 1992. In support of the motion plaintiff Kelly filed a declaration which stated: "1. I am the Plaintiff in this matter. I was injured when I fell while exiting the elevators at the Hillcrest Medical Center on January 6, 1989. [¶] 2. At my deposition, I testified I thought the accident happened on the small elevator. On further thought and

a review of the photographs, I now am not sure if it was the large or the small elevator." Based upon the change of focus, plaintiffs' counsel sought further discovery relating to the large elevator, which Amtech refused to provide. The motion was apparently denied.

Arbitration was held on October 21, 1992. An award was filed on October 27, 1992, and plaintiffs timely requested a trial de novo.

Trial was initially scheduled for February 24, 1993. The parties exchanged expert witness information and plaintiffs designated Maurice Scott as an elevator expert. Scott was deposed by respondents on January 28, 1993.

On February 4, 1993, plaintiffs' counsel served a trial brief on respondents. The third item addressed in the trial brief was the confusion relating to which elevator failed and caused the incident: "The accident occurred on January 6, 1989. There were two elevators—a large and a small one. There is a conflict in the evidence as to whether the accident took place on the large or small elevator. Plaintiffs contend the elevator misleveled a foot and a half or more. Defendant Amtech . . . contends that is impossible. Plaintiffs do not offer or seek to offer evidence of subsequent repairs to prove negligence by Defendants. Instead, it is offered to prove the identity of the elevator in which the accident happened. It is also offered to respond to Defendant's evidence that the elevator was free from defect. . . . Plaintiff[s] ha[ve] expert testimony on these issues. The Defense will testify that the accident could not occur."

On February 24, 1993, Amtech filed a trial brief which set forth a review of the case and its position with regard to the issues to be tried. Pertinent to our discussion is the following passage: "Both of the plaintiffs have testified and repeatedly designated that the elevator involved in their incident was the small elevator. There are two elevators at this location which are different in size. The plaintiffs allege that their incident occurred in the smaller of the two elevators. Their incident reports [and] notes regarding the same specify it was the *small* elevator. [¶] In summary, the plaintiffs' version of events vary grossly. Amtech contends that its employees properly maintained, serviced and repaired the elevators at all times. Further, Amtech has no culpability for the alleged incident, even if they did, in fact, 'occur' as plaintiffs were not heeding their own safety and failed to watch where they were going as they stepped out of the elevator car." The trial brief also contends that Amtech had no notice of any dangerous condition of the elevator.

Trial was continued to August 18, 1993.

B. *The motions in limine*:

On August 18, 1993, the matter was assigned from the master calendar court to a trial department. On the same day, Amtech filed 28 motions *in limine*. These motions were apparently served on plaintiffs' counsel by mail on August 17, 1993. Only two of the motions are pertinent to our discussion at this point, motion No. 1 and motion No. 11.

1. *Motion No. 1*:

This motion sought to preclude "plaintiffs, their counsel and/or any witnesses" from producing evidence "that plaintiffs were in or were injured when they stepped out of the *larger* of the two elevators located at the subject building, *or any evidence related to the functioning of the larger elevator*." (Italics added.) In other words, Amtech sought to compel plaintiffs to try the case solely on the basis that the accident occurred on the smaller elevator, urging that any evidence relating to the large elevator was irrelevant. As support for their motion, Amtech provided the court with Kelly's testimony at her deposition that she believed the incident occurred on the smaller elevator and referenced a notation she made in a report after the accident that the incident occurred on the smaller elevator. The trial court granted the motion.

2. *Motion No. 11*:

This motion sought to preclude plaintiffs' expert Maurice Scott "from testifying as an expert [in this case] in any capacity." While the referenced relief was quite broad, the foundation for the motion was the grant of motion No. 1, limiting the evidence at trial to failure of the small elevator. The argument presented was that at his deposition Mr. Scott's opinions primarily related to problems with the large elevator and that he had no specific knowledge of or negative opinions relating to the small elevator. The argument was presented as follows: "During Mr. Scott's deposition, he produced a copy of a letter written to him by . . . counsel for plaintiffs. This letter . . . informs Mr. Scott that plaintiffs were injured on 'an elevator.' Further, the letter states that, 'the documents indicate that on January 13, 1989, major repairs were made on the large elevator. The basic question that I have is whether the major repairs that took place on 1/13/89 could support my clients [*sic*] testimony that the elevator mislevelled on 1/6/89 and the door opened.' Nowhere does this letter indicate that plaintiffs were injured in the small elevator, as they repeatedly testified throughout this litigation. Moreover, the letter refers only to the *large* elevator, which is not at issue in this litigation. Thereafter, the records upon which Scott based his opinions

are for *the large* elevator *after* the incident at issue. Mr. Scott was denied all records, regarding plaintiffs' depositions showing the incident occurred in the small elevator and, based thereon, 'guessed' that more likely than not, it was the large elevator."

Initially, the court granted the motion precluding Scott from testifying with regard to any information relating to the large elevator but denied the motion as to the small elevator. However, after further argument, the scope of the motion changed and the court precluded Scott from testifying altogether.

## C. *The nonsuit.*

After the court had effectively excluded any presentation of evidence on liability, plaintiffs' counsel suggested that the process could be shortened in that he would make an opening statement to the court and the court would then rule on whether he had referenced sufficient evidence to avoid a nonsuit. The court and counsel agreed to proceed in the manner suggested and plaintiffs' counsel made an opening statement, basically an offer of proof, in the following particulars.

On January 6, 1989, his clients, Deborah Kelly and Beverly Caradine went to the Hillcrest Medical Center and "got on 'a' elevator" and went to the fourth floor. The elevator misleveled a foot to a foot and a half. As the two plaintiffs stepped off the elevator it began to rise and they each fell, injuring themselves.

Amtech was the repair and maintenance company responsible for the elevators, Auerbach Leasing was the management company for the building and New West was the owner of the building.

In October of 1988, Amtech wrote to Auerbach informing them that both elevators at the building needed extensive repairs. One of the problems addressed was misleveling of the elevators. A repair proposal was included which indicated that the work would cost approximately $100,000 and would include replacement of the control mechanisms on both elevators to control leveling and bring the leveling in line with code requirements, no more than one quarter of an inch.

At this point plaintiffs' counsel addressed two items which were objected to by counsel for Amtech. First, counsel indicated that Amtech and Auerbach had suppressed the repair documents during discovery. Second, he indicated that his expert Scott would testify that "elevators misleveling at a

height of more than one inch—could not occur in the absence of negligence." He advised the court that he would rely upon the concept of res ipsa loquitur. The trial court had previously granted motion *in limine* No. 7 limiting testimony of plaintiffs' experts to opinions rendered during their depositions; therefore, argument on the second issue centered on whether Scott gave such an opinion at the time of his deposition. Amtech's counsel advised the court that he had not done so and counsel for plaintiffs advised the court: "I would say the general thrust of his testimony—he wasn't asked that specific question. But I think the general thrust of his testimony at the deposition—and if it's made part of the record anybody can read it, can draw their own conclusions. [¶] The general thrust of his testimony is that these elevators would not mislevel at the height that we're talking about and I say more than one inch because the defense has said these would be impossible for them."

The court granted a nonsuit. A judgment of nonsuit was entered on September 9, 1993, and this appeal followed.

DISCUSSION

*Motions in limine, generally:*

In recent years, the use of motions *in limine* has become more prevalent, primarily by defense counsel to address a number of perceived concerns. It is not uncommon for the trial court to be presented with in excess of 10 separate motions *in limine*, as here, where Amtech presented 28 such motions to the trial court.

■ "Motions *in limine* are a commonly used tool of trial advocacy and management in both criminal and civil cases. Such motions are generally brought at the beginning of trial, although they may also be brought during trial when evidentiary issues are anticipated by the parties. In either event, they are argued by the parties, either orally or in writing or both, and ruled upon by the trial judge. The usual purpose of motions *in limine* is to preclude the presentation of evidence deemed inadmissible and prejudicial by the moving party. A typical order *in limine* excludes the challenged evidence and directs counsel, parties, and witnesses not to refer to the excluded matters during trial. (3 Witkin, Cal. Evidence, *supra*, § 2011 at p. 1969.) 'The advantage of such motions is to avoid the obviously futile attempt to "unring the bell" in the event a motion to strike is granted in the proceedings before the jury.' (*Hyatt* v. *Sierra Boat Co.* (1978) 79 Cal.App.3d 325, 337 [145 Cal.Rptr. 47].) [¶] Motions *in limine* serve other purposes as well. They

permit more careful consideration of evidentiary issues than would take place in the heat of battle during trial. They minimize side-bar conferences and disruptions during trial, allowing for an uninterrupted flow of evidence. Finally, by resolving potentially critical issues at the outset, they enhance the efficiency of trials and promote settlements. [Citation.]" (*People* v. *Morris* (1991) 53 Cal.3d 152, 188 [279 Cal.Rptr. 720, 807 P.2d 949], disapproved on an unrelated ground in *People* v. *Stansbury* (1995) 9 Cal.4th 824, 830 [38 Cal.Rptr.2d 394, 889 P.2d 588].)

A few of the motions proffered by Amtech were appropriate. For example, motion No. 3 sought to preclude plaintiff Kelly from referring to statements made to her by Brian Johnson, the garage attendant at the building, about his need to rescue people from the elevators when the doors had stuck on a number of occasions prior to her incident. The trial court properly granted the motion, but without prejudice to a later hearing pursuant to Evidence Code section 402, if necessary. Motion No. 28 sought an order excluding evidence relating to a prior lawsuit filed by the mother of Beverly Caradine against Auerbach allegedly resulting from a slip-and-fall incident which occurred on the same premises. Absent a showing of relevance, such evidence would have been collateral to the issues raised in this litigation.

On the other hand, many of the motions filed by Amtech were not properly the subject of motions *in limine*, were not adequately presented, or sought rulings which would merely be declaratory of existing law or would not provide any meaningful guidance for the parties or witnesses. For example, motion No. 19 sought to ". . . exclude any testimony of the plaintiffs which is speculative." No factual support or argument was presented to suggest the nature and type of speculative testimony which Amtech expected to be elicited from plaintiffs. Motions No. 8, 20 and 21 sought to exclude evidence of prior incidents unless an appropriate foundation was established to show the relevance of such evidence or that the prior incidents were similar in nature to the incident involved in the suit. Again, no factual support was presented in connection with the motions, meaning the court would have to rule in a vacuum. Motion No. 7, previously referred to, sought to limit the opinions of plaintiffs experts to those "rendered at deposition and in written reports." Again, there was no supporting evidence to suggest what opinions had been rendered at the depositions, leaving the court and the parties to guess what opinions during trial may be included within the scope of the ruling. Motion No. 6 sought an order precluding plaintiffs from calling any witnesses "not previously identified in plaintiffs' discovery responses." Absent a meaningful and expressed belief that this may occur, this was a

meaningless motion unless and until plaintiffs attempted to call such witnesses.[3]

"Under appropriate circumstances, a motion *in limine* can serve the function of a 'motion to exclude' under Evidence Code section 353 by allowing the trial court to rule on a specific objection to particular evidence. . . . [¶] In other cases, however, a motion *in limine* may not satisfy the requirements of Evidence Code section 353. For example, it may be difficult to specify exactly what evidence is the subject of the motion until that evidence is offered. Actual testimony sometimes defies pretrial predictions of what a witness will say on the stand. Events in the trial may change the context in which the evidence is offered to an extent that a renewed objection is necessary to satisfy the language and purpose of Evidence Code section 353. As we observed in *People* v. *Jennings* [(1988) 46 Cal.3d 963 (251 Cal.Rptr. 278, 760 P.2d 475)], '[U]ntil the evidence is actually offered, and the court is aware of its relevance in context, its probative value, and its potential for prejudice, matters related to the state of the evidence at the time an objection is made, the court cannot intelligently rule on admissibility.' (46 Cal.3d at p. 975, fn. 3.) In these kinds of circumstances, an objection at the time the evidence is offered serves to focus the issue and to protect the record." (*People* v. *Morris*, *supra*, 53 Cal.3d at pp. 188-190.)

It is frequently more productive of court time, and the client's money, for counsel to address issues to be raised in motions *in limine* informally at a pretrial conference and present a stipulation to the court on noncontested issues. Matters of day-to-day trial logistics and common professional courtesy should not be the subject of motions *in limine*. For example, motion No. 15 sought an order that all counsel inform other counsel the day before which witnesses will be called the next day; motion No. 17 sought an order that no exhibits be shown to the jury without having first been seen by all counsel and the court. These are matters of common professional courtesy that should be accorded counsel in all trials. Also, procedural matters and items relating to jury selection most often can be addressed orally and informally with the court, and later preserved on the record if necessary. Here, motion No. 2 requested that during voir dire the court inquire about jurors' experiences with elevators; No. 12 requested that during voir dire the jury not be questioned about specific dollar amounts of damages. These issues could have been raised orally, which would have reduced the amount of paperwork the court needed to review prior to impaneling a jury.

---

[3]While pages of deposition transcript were attached to a few of the motions, there was no factual support by way of declaration or affidavit in support of any of these motions or to authenticate the pages attached to the motion. Motions *in limine*, to the extent that they rely upon a factual foundation, are no different than any other pretrial motion and must be accompanied by appropriate supporting documents. Absent an appropriate factual showing to support the motion, the court should not entertain the motion.

*Motion in limine No. 1:*

In support of motion No. 1, Amtech cited Evidence Code sections 210, 350 and 352 as well as the case of *Campain* v. *Safeway Stores, Inc.* (1972) 29 Cal.App.3d 362 [104 Cal.Rptr. 752].[4] Amtech argued that because plaintiffs testified that the accident occurred on the small elevator, evidence relating to the large elevator was irrelevant and should be excluded.[5] The court erroneously granted the motion.

While a party may be precluded from introducing evidence based on a response to a request for admission (Code Civ. Proc., § 2033, subd. (n)), depositions and interrogatories do not perform the same function as requests for admissions, issue preclusion: "As Professor Hogan points out, '[t]he request for admission differs fundamentally from the other five discovery tools (depositions, interrogatories, inspection demands, medical examinations, and expert witness exchanges). These other devices have as their main thrust the uncovering of factual data that may be used in proving things at trial. The request for admission looks in the opposite direction. It is a device that seeks to eliminate the need for proof in certain areas of the case.' [Citation.] The Supreme Court put it in similar terms, '[m]ost of the other discovery procedures are aimed primarily at assisting counsel to prepare for trial. Requests for admissions, on the other hand, are primarily aimed at setting at rest a triable issue so that it will not have to be tried. Thus, such requests, in a most definite manner, are aimed at expediting the trial.' [Citation.]" (*Brigante* v. *Huang* (1993) 20 Cal.App.4th 1569, 1577-1578 [25 Cal.Rptr.2d 354].)

It is a misuse of a motion *in limine* to attempt to compel a witness or a party to conform his or her trial testimony to a preconceived factual scenario based on testimony given during pretrial discovery. One purpose of pretrial discovery is to pin down the testimony of parties and witnesses which can be used for impeachment at the time of trial. Amtech clearly succeeded in this regard. Other than issue preclusion based on responses to requests for admissions, sanctions for abuse of the discovery process, or a clear case of waiver or estoppel, a court abuses its discretion when it precludes a party from trying a case on a theory consistent with existing evidence, even though the pretrial testimony of the party relating to

---

[4]Evidence Code section 210 states: " 'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." Section 350 states: "No evidence is admissible except relevant evidence." We discuss section 352 and the *Campain* decision later.

[5]During oral argument Amtech's counsel conceded that plaintiff Caradine did not recall which elevator they were on.

how the accident occurred is contrary to the theory. There is no suggestion in the record before us that plaintiffs abused any portion of the discovery process, nor are there any facts to support a theory of waiver or estoppel.

Amtech relied upon *Campain* v. *Safeway Stores, Inc.*, *supra*, 29 Cal.App.3d 362, in support of its motion. In that case, during plaintiff's deposition, counsel for the defendant inquired whether plaintiff was making a claim for loss of earnings. Plaintiff's counsel answered: " 'I believe she was studying real estate at the time of the accident. There may be a claim for prospective loss of earnings, but we are not claiming that she was employed and lost any immediate employment.' " (*Id.* at p. 364.) Defendant then sent out an interrogatory which inquired: " 'Are you making any claim for loss of wages, earnings or earning capacity as a result of the accident alleged in your complaint?' " Plaintiff responded: " 'No.' " (*Id.* at p. 365, italics omitted.) Later, plaintiff moved to amend her complaint to increase her general damages allegation and prayer to $350,000. In connection with the motion she referenced the nature and extent of her physical injury but did not suggest that it impacted on loss of earnings. At trial, during opening statement, her counsel did not mention loss of past or future earnings. However, the first evidence offered at trial by plaintiff related to how her injury affected prospective employment. Safeway objected, the objection was initially sustained, but was later overruled by the trial court and the jury awarded an amount of damages for loss of earnings.

The Court of Appeal reversed the damage award and ordered a new trial on the issue of damages only. It concluded that plaintiff's announced pretrial election not to seek such damages was prejudicial to Safeway: "Safeway acted reasonably in relying on pretrial discovery in the preparation of its case for trial. 'The discovery laws in California are designed to expedite the trial of civil matters by (1) enabling counsel to more quickly and thoroughly obtain evidence and evidentiary leads, and thus to more quickly and effectively prepare for trial, and (2) enabling counsel to "set at rest" issues that are not genuinely disputed. [Citations.]' A party may be required to disclose whether or not he will press an issue in the case. [Citation.] Here, [plaintiff] had apparently 'set at rest' the issue of loss of earnings and future earnings. When at the trial she sought to revive that issue, Safeway entered its objection to the introduction of evidence on loss of earnings and future earnings at the earliest possible moment. [Citation.] Prejudice to Safeway is apparent, . . . On this issue Safeway is entitled to further discovery and a new trial." (29 Cal.App.3d at p. 366.)

Amtech's reliance on *Campain* is not warranted. The Court of Appeal did not preclude plaintiff from making such a claim, rather, it reversed the

judgment and remanded the matter for retrial on the issue of damages, after Safeway had been allowed further discovery.

Amtech also relied upon Evidence Code section 352, which states as follows: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

"Evidence Code section 352 vests discretion in the trial judge to exclude evidence where its probative value is substantially outweighed by the probability that its admission will necessitate undue consumption of time or create a substantial danger of prejudice, of confusion of issues, or of misleading a jury. 'The discretion granted the trial court by section 352 is not absolute [citations] and must be exercised reasonably in accord with the facts before the court.' (*Brainard* v. *Cotner* (1976) 59 Cal.App.3d 790, 796 [130 Cal.Rptr. 915].)" (*Kessler* v. *Gray* (1978) 77 Cal.App.3d 284, 291 [143 Cal.Rptr. 496].)

In the trial court, Amtech argued that discovery had been closed in September 1992 and it would be prejudicial to respondents to allow plaintiffs to change their story at trial and urge that the incident occurred on the larger elevator. Effectively, this presented an argument of "surprise," an argument that does not fall within the scope of Evidence Code section 352: " 'Unfair surprise' is one of the generally stated bases for exclusion. . . . But there is a dearth of case law illustrating this supposed rule, and it seems both unnecessary and dangerous. Discovery . . . and pretrial conference . . . are means of preventing such surprise. And if, despite diligent preparation and use of these procedures, evidence is introduced which is so important and so wholly outside reasonable anticipation that the other party is harmed by its sudden introduction, *the appropriate remedy is a request for a continuance.* [Citation.] [¶] For these reasons, the Commission eliminated this ground from Ev.C. 352." (1 Witkin, Cal. Evidence (3d ed. 1986) Circumstantial Evidence, § 307, p. 277, italics added.)

Nor can the trial court exclude evidence which is directly relevant to the primary issues of the litigation because the evidence is prejudicial to the opponent. "Where the evidence relates to a critical issue, directly supports an inference relevant to that issue, and other evidence does not as directly support the same inference, the testimony must be received over a section 352 objection absent highly unusual circumstances. . . . Here prejudice flowing from the Buckner testimony [a pretrial statement] is only that inherent in its relevance, no possibility of confusion exists, and there is no

indication that exploration of the issue will consume court time in excess of that required for a fair trial. In those circumstances, we must conclude that there is not a reasonable basis for exercise of trial court discretion excluding the Buckner testimony pursuant to Evidence Code section 352." (*Kessler* v. *Gray, supra,* 77 Cal.App.3d at p. 292.)

The mere fact that plaintiff Kelly *initially* identified the small elevator as the one on which she thought she was riding does not render evidence relating to the large elevator irrelevant. Her deposition testimony also included statements indicating she had witnessed malfunctions in both elevators. She later declared her lack of certainty as to which elevator had allegedly caused her injuries. The jury may find that plaintiffs were in fact riding on the large elevator. We conclude that Amtech's request to exclude evidence other than that related to the small elevator was completely without foundation and that the trial court abused its discretion in granting the motion.

*Motion in limine No. 11:*

Because the foundation for motion No. 11 was the grant of motion No. 1, it was also error to grant motion No. 11. However, this does not conclude our discussion of pretrial error. Counsel for Amtech was able to turn the hearing into an Evidence Code section 402 hearing relating to Scott's competence to testify without any notice to plaintiffs' counsel, after which the court precluded any testimony by Scott without hearing from the witness.

When motion No. 11 was first addressed, the trial court initially granted it to preclude testimony by Scott relating to the large elevator but denied the motion relative to the small elevator. This apparently did not satisfy Amtech, which suggested an Evidence Code section 402 hearing on the competence of Scott to give any testimony in conjunction with grant of motion *in limine* No. 7 precluding Scott from testifying to any opinions not rendered at this deposition. Counsel for Amtech suggested that the matter could be presented based on Scott's deposition testimony. The following exchange took place between the court and counsel for plaintiffs. "THE COURT: . . . The purpose of these proceedings is pursuant to section 402 of the Evidence Code to determine the foundational aspects of the admissibility of the testimony of the plaintiff's expert regarding the elevator. [¶] His name again? [¶] MR. GORDON [counsel for plaintiffs]: Maurice Scott. [¶] Now may I be heard just briefly, Your Honor? [¶] THE COURT: Depending with the thought in mind if it's something raised before. [¶] MR. GORDON: It's not raised before. This is something new. [¶] THE COURT: All right. [¶] MR. GORDON: Number one,

let me make an objection. If we're going to have a 402 hearing on Mr. Scott I think Mr. Scott should be here, number one, and not do it on a deposition. That's number one. [¶] THE COURT: Why wasn't this mentioned this morning? [¶] MR. GORDON: Well, I'm standing up as soon as I hear you framing what we're here for. [¶] THE COURT: Wasn't that the purpose of this proceeding this afternoon? [¶] MR. GORDON: Number one, you ruled last week that Mr. Scott could testify as an expert. [¶] THE COURT: Sounds like something we have gone over before. I said this this morning and I said there was some new matter that was by inference interjected here by way of the offer of proof that you had as to what he would be asked and some question as to whether or not that would violate the order that was given Friday as to Amtech's motion number one. [¶] MR. GORDON: All right."

Thereafter, the court and counsel discussed Mr. Gordon's offer of proof relating to res ipsa loquitur, and whether Mr. Scott had given any evidence on the issue at his deposition. Mr. Gordon advised the court that Mr. Scott would testify that the type of incident which occurred here does not occur absent negligence. Counsel for Amtech objected that this issue had not come up during the deposition. The court indicated it had to review the deposition transcript to make sure that this was not new testimony in violation of the prior court order that experts not testify to opinions not proffered in their deposition. The court asked that the court reporter reread the question previously stated by Mr. Gordon and then stated: "All right. With that in mind, Mr. Gordon, what are the—what portion of the testimony of Mr. Scott at the deposition would support . . . that answer to that question?" Thereafter the parties read portions of the deposition to the court and argued the issue.

Ultimately, at the urging of Amtech's counsel, the court ordered that Scott not be allowed to testify at all, asserting that his opinions were not supported by competent evidence: "I don't really have any question about his 43 years experience. The question seems to come in for the fact that in his opinion and probably justifiably that based on his experience he feels comfortable responding to the questions that are made. [¶] But there is a d[ea]rth here of factual foundation as to the mechanical characteristics of both elevators at the time in question or from which the expert could render an opinion arguably relating back to the time of the accident. The closest that I find that he comes to that is an opinion regarding the replacement of a part on the larger elevator. [¶] Additional problem seems to be here the fact that these two operators as it turns out from his testimony and as counsel for both sides previously explained the elevators are independent. According to Mr. Scott's testimony they may at times share similar parts but their operation is independent. [¶] And given that fact, [t]he fact that there was a replacement

of a part shortly after the accident on the larger elevator, does not any more than the strength of Mr. Scott's testimony indicate that there was a similar problem on the smaller of the two elevators. [¶] I find that there is a lack of foundation for the expert's conclusions and the conclusions of the expert are therefore barred."

This outcome demonstrates another danger inherent in motions *in limine* if they are not carefully scrutinized and controlled by the trial judge. Amtech was able to successfully guide the court's attention away from the expressed limited nature of the proceeding, to determine if Scott had previously given testimony at his deposition which may support the use of res ipsa loquitur, and turn it into a hearing relating to Scott's overall competence to testify. There was no notice or adequate warning to plaintiffs' counsel that the court would ultimately consider issuing an order that his expert could not testify at all. This was a matter of overreaching by counsel for Amtech and an abuse of discretion by the trial court.

*Prejudice*:

■ "A judgment may not be reversed on appeal, . . . unless 'after an examination of the entire cause, including the evidence,' it appears the error caused a 'miscarriage of justice.' (Cal. Const., art. VI, § 13.) When the error is one of state law only, it generally does not warrant reversal unless there is a reasonable probability that in the absence of the error, a result more favorable to the appealing party would have been reached. (*People* v. *Watson* (1956) 46 Cal.2d 818, 835 [299 P.2d 243].)" (*Soule* v. *General Motors Corp.* (1994) 8 Cal.4th 548, 574 [34 Cal.Rptr.2d 607, 882 P.2d 298].) However, where the error results in denial of a fair hearing, the error is reversible per se. Denying a party the right to testify or to offer evidence is reversible per se. (*Fewel* v. *Fewel* (1943) 23 Cal.2d 431, 433 [144 P.2d 592]; *Guardianship of Waite* (1939) 14 Cal.2d 727, 729 [97 P.2d 238]; *Caldwell* v. *Caldwell* (1962) 204 Cal.App.2d 819, 821 [22 Cal.Rptr. 854].)

The effect of granting motions No. 1 and 11 was to prevent plaintiffs from offering evidence to establish their case, meaning the error is reversible per se. It would be a further miscarriage of justice were we to conclude otherwise. Because of the court's preclusion, we have nothing more than evidence referenced in argument on the motions and plaintiffs' brief opening statement of the nature and extent of the evidence plaintiffs' counsel would have been able to present during the trial. The record supports an inference that plaintiffs were injured as a result of a misleveling problem with one of the elevators and that respondents did have knowledge that such problem existed.

*Res ipsa loquitur*:

The parties have addressed the issue whether this case falls within the concept of res ipsa loquitur. Because the matter must be reversed and remanded we need not decide this issue.

## DISPOSITION

The judgment of nonsuit is reversed and the matter is remanded to the trial court for further proceedings. Costs are awarded to appellant.

Vogel (C. S.), P. J., and Baron, J., concurred.