Filed 8/20/14  Marriage of Sample CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| In re the Marriage of MIA K. and GREGORY A. SAMPLE. | C071542 |
| MIA K. SAMPLE,<br><br>        Appellant,<br><br>    v.<br><br>GREGORY A. SAMPLE,<br><br>        Respondent. | (Super. Ct. No. PFL20050789) |

Mother Mia K. Sample appeals from a court order wherein the trial court denied mother's motion to modify child support, refused her request for attorney fees, and ordered mother to pay attorney fees and sanctions to father Gregory A. Sample. Representing herself on appeal, mother raises numerous claims of error, none of which have merit.  Accordingly, we affirm the orders of the trial court.

1

## BACKGROUND

In June 2010, father filed a motion in the trial court addressing numerous issues, including overpayment of child support, implementing recommendations made in a Family Code section 3111 evaluation, and requesting attorney fees. Mother opposed the motion and filed her own motion seeking a modification of child support and attorney fees. On August 19, 2010, the trial court ruled on each of the issues raised in father's motion except his request for fees and the overpayment of child support. Those remaining issues were set for further hearing and the parties were ordered to return in December to review progress on coparenting counseling.

After several continuances, on November 4, 2010, the trial court again continued mother's motion to modify child support at mother's request, but noted "the Court will not look favorably upon another request for a continuance without good cause." The trial court also clarified the issues set for hearing: (1) mother's motion to modify child support; (2) father's motion to determine the over payment of child support; (3) father's request for sanctions; (4) review of coparenting counseling; and (5) the parties' request for attorney fees. Father also asked mother, who was no longer working, to agree to submit five job applications every two weeks. Mother agreed. The court then ordered father to pay to mother the previously ordered $63 a month in child support and set the continued hearing for February 18, 2011.

On January 20, 2011, the parties appeared before the trial court on mother's ex parte application for an order shortening time on discovery of third party financial information. Following argument, the court denied mother's application and denied her request for attorney fees; however, the court agreed to continue the February 18, 2011 hearing to March 4, 2011. The court also agreed to hear mother's request for evidentiary sanctions at that hearing. Father asked whether the matter was being set for law and motion "or a trial," but the court did not respond to his question.

On April 11, 2011, the parties appeared before the trial court to resolve the issues previously set to be heard on February 18, 2011. Soon after the hearing began, the trial court interrupted mother's counsel, Sharon Huddle, to say, "[W]hat we're dealing with is your opening statement. And so I just want to know what the issues are. We're here today for an evidentiary hearing on --" Ms. Huddle objected: "Oh, no, we're not, your Honor. This is only a motion. They objected to setting any evidentiary hearing. Oh, I have not prepared any exhibits or anything. This is the motion. They objected to any evidentiary hearing."

Father's counsel, Mark Cudney, responded: "I don't know what counsel is representing, but we're here for trial. I mean, we came here in October or November 4th, and they requested a continuance of the trial, and we opposed. So we're here for a trial. We want this over with. I strenuously object to just submitting this on a declaration."

After further discussion, Ms. Huddle restated her objection: "I would have -- I'm going to get the last transcript because he objected to any evidentiary hearing. It was never set for trial. He absolutely objected, and we are here on a motion today not a trial. I will order every single transcript. You will see in there not a moment was this ever set for trial. This was set to come back on a hearing, because I was not getting my discovery, not -- for a motion, not for an evidentiary hearing. It was never set for that. They objected to it. I left two boxes of my stuff back at the office. This was only a hearing today. This was not a trial.

"So he's saying this because he's, 'Okay. She's not prepared. Let's go.' That's why he's saying that. But the transcript will tell different. When I order the transcript from the court reporter, you will see that this was never set for trial, never. And to force me to do a trial today when I'm totally not prepared -- I don't even have all my records here." Ms. Huddle then argued with the trial court about whether she or Mr. Cudney was responsible for the repeated requests to continue the hearing.

3

"THE COURT: Well, Miss Huddle, the only thing the Court can go on is what's before the Court in its file. What's in the file is a request from your client for a continuance. At any rate, we're here today. Let's move forward. What's the evidence that -- if you want to present any evidence other than what's in the declaration, then go ahead and provide it.

"MS. HUDDLE: Your Honor, I'm not prepared. This was not set for a trial -- evidentiary hearing, and it's not fair to my client. It is totally unfair to her to go forward with an evidentiary hearing when it was not set for an evidentiary hearing, and they objected to it.

"MR. CUDNEY: We never objected. I filed a timely response. They have requested the continuances. The only reason there was a continuance last time is because they sent me a fax saying she had a new job, and they would provide income information to me. That was why it was continued. It wasn't because we were stalling. This is all fabricated by counsel. Not giving them documents, I don't even know where she gets this information from.

"THE COURT: Well, we're moving forward today, Miss Huddle. Now any evidence you want to put before this Court, I'm glad to entertain. And if you tell me that what you've got is what's in the declaration, then --

"MS. HUDDLE: You know, I'm going to have to have my secretary drive to this office two boxes full of documents because that's what I have.

"THE COURT: Okay.

"MS. HUDDLE: I don't have -- I have the documents from Bank of America, the documents that show his false taxes. I don't have any copies. I have no exhibits. I have nothing.

"THE COURT: Okay.

"MS. HUDDLE: I can't give you anything. I'll just say for the record, I highly object to being forced to go to an evidentiary hearing when it was not set for one. And

4

the prior record will reflect that Mr. Cudney objected to an evidentiary hearing more than once and very loudly. His statement that it was set for trial, and we just continued this for trial is completely false. There is absolutely nothing in the record setting this for a trial, nothing.

"THE COURT: Okay. Well, what we will do, I will accept the declaration that has been submitted. If you want to have someone from your office bring other items here, we'll take a short continuance for you to do that. But what I would recommend that you do is to get in touch with your office, get them to get the stuff here, and we'll have Mr. Cudney put on his witnesses while we're waiting for you to get your evidence here.

"MR. CUDNEY: That's fine, your Honor.

"MS. HUDDLE: Okay. I'm objecting. You're forcing me to do it, so I will do it.

"THE COURT: Okay.

"MS. HUDDLE: I want the record to reflect I'm being forced to do this evidentiary hearing when it was objected to. And I will get the records.

"THE COURT: Well, let's take a five, ten-minute recess while Miss Huddle contacts her office. And let me know when she's back here in the courtroom.

"Thanks."

The evidentiary hearing proceeded with father putting his witnesses on first, allowing Ms. Huddle to cross-examine them before mother testified. The trial court then continued the hearing to May 9, 2011. The hearing did not renew, however, until September 23, 2011. In the interim, Ms. Huddle filed a motion to disqualify the trial judge pursuant to Code of Civil Procedure section 170.1. Ms. Huddle argued the judge and Mr. Cudney engaged in ex parte communication either directly or indirectly because she was the only one in the courtroom on April 11, 2011, who did not know the matter was set for an evidentiary hearing. This, she claimed, was evidence the court was biased against her or mother, her client. The court denied the motion as untimely.

5

Immediately following the denial of counsel's motion, the evidentiary hearing continued; both parties were still represented by counsel. Father was again called to testify and Ms. Huddle cross-examined him. Additional documentary evidence was admitted. The evidentiary hearing was again continued to October 17, 2011. In the interim and on its own motion, the court twice ordered the evidentiary hearing continued further, ultimately setting it for January 27, 2012.

On January 27, 2012, mother and father appeared before the court. Father continued to be represented by counsel, mother was now appearing in propria persona. Father again testified and mother cross-examined him; additional documentary evidence was submitted. After father completed his testimony and direct examination of mother was performed by father's counsel, the following colloquy took place between mother and the court: "[MOTHER]: So I can call myself to the stand; right?

"THE COURT: I suppose since you are representing yourself. If Mr. Cudney has rested you have the right to call witnesses in rebuttal. You can testify, but the rebuttal testimony, again, can't go beyond the scope of the things Mr. Cudney has asked in his cross-examination. Normally, you know, if you have an attorney, the attorney would ask a question, the witness would answer a question. Since you are acting as your own attorney, I'm not going to make you ask yourself questions, but I would appreciate it if you let us -- tell us what subject it is you are going to give testimony on, give the testimony on that subject. Before you switch subjects, let us know you are switching subjects. And again, keep your statements relevant to the point you have indicated you are going to talk about.

"[MOTHER]: Can I get down and look at some of my notes?

"THE COURT: You can do that. But Mr. Cudney -- if you testify from notes, he may ask to see those notes.

"[MOTHER]: I don't care. I have nothing to hide. Do you have an objection, Mr. Cudney?

6

"MR. CUDNEY: Start testifying. You will see.

"[MOTHER]: Can I ask you a question, Your Honor? We still have closing arguments and stuff; right? That's all part of this?

"THE COURT: Yes.

"[MOTHER]: I don't have anything more to say. But I would like to call a witness, if I may?

"THE COURT: Yes. Go ahead." After presenting testimony from one witness, mother called no further witnesses.

The court then explained to mother that she would go first in closing argument, then would have a second chance to make her argument after Mr. Cudney. After mother continued to express confusion about the process, the court invited the parties to submit their closing arguments in writing. The trial court ordered the closing arguments to be submitted simultaneously on February 10, 2012. Mother then went through her exhibits to ensure they were all admitted into evidence.

On February 1, 2012, the court extended the deadline for the parties' closing arguments to February 27, 2012. Mother filed her closing argument on February 27, 2012; father filed his on February 28, 2012. Mother filed a written objection to father's closing statement, arguing it was untimely filed. On May 9, 2012, the trial court issued written "findings and [an] order after hearing on child support overpayment."

In the May 9, 2012 order, the trial court denied mother's motion to modify child support and found father overpaid child support to mother in the amount of $4,556. Thus, the court ordered mother to reimburse father that same amount. The court further ordered mother to pay $1,500 toward father's attorney fees, interest of $318.92, and sanctions totaling $681.08. The balance of $7,056 was to be "satisfied by [mother] through a monthly credit from [mother] to [father] in the amount of $63 in satisfaction of [father]'s monthly child support obligation, until the $7056 balance is exhausted."

Mother appeals from that order.

7

DISCUSSION

I

*Mother Was Not Denied Due Process*

Mother contends the trial court denied her due process by proceeding with the evidentiary hearing after counsel made it clear that mother was never given notice the court would be taking evidence at the hearing. Whether or not Ms. Huddle was notified that the April 11, 2011 hearing was an evidentiary hearing, we find mother was given ample opportunity to present her case and to cross-examine father. We thus find she was given sufficient due process in the trial court proceedings.

"[W]here the trial court denies a party his [or her] right to a fair hearing, it exceeds its jurisdiction, and the error is reversible per se. [Citation.]" (*In re Marriage of Carlsson* (2008) 163 Cal.App.4th 281, 292, italics omitted.) " 'One of the elements of a fair trial is the right to offer relevant and competent evidence on a material issue. Subject to such obvious qualifications as the court's power to restrict cumulative and rebuttal evidence . . . , and to exclude unduly prejudicial matter [citation], denial of this fundamental right is almost always considered reversible error. [Citations.]' (3 Witkin, Cal. Evidence (4th ed. 2000) Presentation at Trial, § 3, pp. 28-29 . . . .) Ordinarily, parties have the right to testify in their own behalf (*Guardianship of Waite* (1939) 14 Cal.2d 727, 730), and a party's opportunity to call witnesses to testify and to proffer admissible evidence is central to having his or her day in court. (*Kelly v. New West Federal Savings* (1996) 49 Cal.App.4th 659, 677; see *Spector v. Superior Court* (1961) 55 Cal.2d 839, 843, 844.)" (*Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1357, italics omitted.)

When mother appeared for the hearing on April 11, 2011, Ms. Huddle made it clear to the trial court that she was not prepared to put on evidence and she believed the hearing was simply a continued short cause hearing. The trial court noted mother's objection and invited her to go second in the presentation of evidence, even though it was

8

her motion. The court also gave mother's counsel an opportunity to get her files to the courthouse. That day, father testified on his own behalf and was cross-examined.

The evidentiary hearing was then continued for more than five months, during which time mother had ample opportunity to prepare. When the hearing resumed in September 2011, mother continued to be represented by counsel who continued to cross-examine father. The trial was not completed that day, and resumed again on January 27, 2012.

In January 2012, mother was no longer represented by counsel but she continued the cross-examination of father and was given the opportunity to offer her own testimony in rebuttal. Mother also presented testimony from an additional rebuttal witness. [1] Mother later filed a written closing argument.

We thus conclude that, on this record, mother was given her "day in court"; she was not denied due process.

## II

*Mother's Unsuccessful Motion to Disqualify the Trial Judge Is Not Reviewable on Appeal*

Mother further contends the trial court erred in denying her Code of Civil Procedure section 170.1 motion to disqualify the judge. "[A] petition for writ of mandate pursuant to Code of Civil Procedure section 170.3, subdivision (d) is the exclusive means by which a party may seek review of an unsuccessful motion to disqualify a trial judge. [Citations.]" (*Roberts v. County of Los Angeles* (2009) 175 Cal.App.4th 474, 487, fn. omitted.) Accordingly, the issue is not properly before this court on appeal.[2]

---

[1] Mother claims the court refused to let her testify. This claim is not supported by the record. Indeed, the trial court gave mother clear, specific instructions on how she was to offer her rebuttal testimony. Mother told the court: "I don't have anything more to say."

[2] We further note that the time to file that petition for writ of mandate has long passed. Such a petition filed and served "within 10 days after service of written notice of entry of the court's order determining the question of disqualification. If the notice of

9

### III

*Mother's Claims of Error Regarding Modification and Enforcement of Child Support*

*are Forfeited Because They Are Not Supported by Relevant Legal Authority or*

*Meaningful Argument*

Mother contends the trial court "erred in failing to grant [her] motion to modify child support, attorney's fees and costs." Mother also contends the trial court "err[e]d in failing to not enforce calculations of child support over payment from previous trial November in 2009." Each of these contentions fail because mother failed to support either of them with meaningful argument or citations to relevant legal authority. (*Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115-1116 [merely setting forth general legal principles without specifically demonstrating how they establish error is insufficient to raise a cognizable issue on appeal]; *Estate of Hoffman* (1963) 213 Cal.App.2d 635, 639 ["It is the duty of counsel to support his claim by argument and citation of authority. [A reviewing court is] not obliged to perform the duty resting on counsel."].) That mother is not represented by counsel on appeal does not excuse her failure to comply with appellate procedure. (*Leslie v. Board of Medical Quality Assurance* (1991) 234 Cal.App.3d 117, 121; see also *Nelson v. Gaunt* (1981) 125 Cal.App.3d 623, 638-639; *Wantuch v. Davis* (1995) 32 Cal.App.4th 786, 795.)

---

entry is served by mail, that time shall be extended as provided in subdivision (a) of Section 1013." (Code Civ., Proc., § 170.3, subd. (d).)

DISPOSITION

The trial court's orders are affirmed.  Each party shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)


      NICHOLSON    , Acting P. J.


We concur:


      DUARTE    , J.


      HOCH    , J.