Filed 8/18/16  Marquez v. PAC Operating Limited Partnership CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ANTHONY MARQUEZ, | B263403 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. JCCP 4674 |
| v. | BC531139) |
| PAC OPERATING LIMITED PARTNERSHIP, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lawrence H. Cho, Judge.  Affirmed.

Levin Simes, William A. Levin, Laurel L. Simes, Mahzad K. Hite; The Ehrlich Law Firm and Jeffrey I. Ehrlich for Plaintiff and Appellant.

Yukevich|Cavanaugh, James J. Yukevich, Elizabeth M. Olsen and Paul C. White for Defendant and Respondent.

Plaintiff Anthony Marquez appeals from a judgment following a jury trial in favor of defendant and respondent PAC Operating Limited Partnership (PAC) on Marquez's claim for personal injuries caused by exposure to asbestos. Marquez contends that the trial court abused its discretion when it granted PAC's motion in limine to exclude evidence that PAC (through its corporate predecessor) had an ownership interest or operational role in a site of claimed asbestos exposure within the City of Coalinga, where Marquez lived from 1959 until 1972. Marquez also argues the trial court erred when it denied his motion seeking new trial. Finding no error, we affirm.

## FACTUAL BACKGROUND

*The Mountain Superfund Sites*

Southern Pacific Land Company (SPLC) owned 557 acres of land in the Diablo Mountain Range, about 17 miles outside of the City of Coalinga (City). In 1961, SPLC leased the land to a company owned primarily by the Johns-Manville Company (Johns-Manville), which mined and milled asbestos ore at and shipped the ore from the site until 1974, when it ceased operations. SPLC then leased that property to another company that mined chromite until 1978.

In 1980, the United States Environmental Protection Agency (EPA) discovered a high concentration of asbestos in the California aqueduct. The EPA traced the source to mining operations in the mountains outside the City, declared those sites to be "superfund" sites, and determined that significant corrective measures were necessary. SPLC submitted its remediation plan to the EPA in 1983. PAC is the successor-in-interest to SPLC.

2

*The Coalinga Superfund Site*

In 1987, EPA testing revealed even higher levels of contamination within a 107-acre site inside the City–where asbestos had been trucked from the mines to be bagged and stored before being shipped out on the railroad–than in the mountain superfund sites.  The EPA declared the 107-acre parcel, known as the Coalinga Operating Unit (OU), a superfund site.

*Marquez Develops Mesothelioma*

Marquez moved to Coalinga in 1959 when he was five years old.  He lived there until he left the Fresno area in 1972.  At his deposition, Marquez testified that he could not recall ever having visited the asbestos mills or mines in the mountains outside the City during the years he lived there.  Nor could he recall ever hiking in the mountains where the mines and mills were located.  From 1975 to 2005, Marquez was exposed to asbestos-containing gaskets, packing and thermal insulation in the course of his career as a pipe inspector, working primarily at oil refineries and power plants.

In August 2012, Marquez began experiencing abdominal swelling caused by fluid accumulation in his peritoneal cavity.  Medical tests revealed he suffered from peritoneal mesothelioma, a terminal cancer caused by exposure to asbestos.

## PROCEDURAL BACKGROUND

Marquez initiated this personal injury action on December 20, 2013.  He sued 18 defendants, categorized as "asbestos" or "premises" defendants.  PAC is a premises defendant, but the complaint does not specify the real property that forms the basis for Marquez's allegations.  The complaint asserts claims of negligence, strict liability and premises liability based on Marquez's alleged exposure to

asbestos during his childhood in Coalinga, and during his 30-year career as a pipe inspector.

Because of the rapid deterioration of his health, Marquez requested and received trial preference, and trial was scheduled for July 7, 2014. (Code Civ. Proc., § 36.) In mid-May 2014, a defendant (not PAC) removed the case to federal court. Discovery was stayed while the parties litigated which was the appropriate forum in which to proceed. On July 7, 2014, the matter was remanded to the Superior Court. Marquez's renewed request for trial preference was granted, and trial and the final status conference were scheduled for September 2, 2014.

While the facts involved are complex and the appellate record incomplete, the issue presented is straightforward: Did the trial court abuse its discretion in granting PAC's motion in limine excluding evidence at trial related to its alleged role, if any, in the ownership or management of the Coalinga OU. PAC argued, among other things, that it was unfairly surprised by Marquez's assertion of a premises liability claim related to the Coalinga OU on what was essentially the eve of trial. Marquez maintains PAC had ample notice of this theory–based primarily but not exclusively on his discovery responses–well before trial, so its claim of surprise was unsupported. In an effort to distill and clarify the discussion, we summarize discovery and the relevant motions.

*Discovery*

*Marquez's verified February 27, 2014 response to PAC's Standard Interrogatory No 28*: This interrogatory asked Marquez about his exposure to asbestos. Marquez referenced the mountain superfund sites. He also stated that asbestos fibers were transported from the mountain superfund sites to the City for storage before being loading onto the railroad, that dust from the mines spread over

4

the City, that the level of asbestos fibers in the City's air and soil remained high as late as 1987 and that he ingested contaminated aqueduct water. Marquez did not mention the Coalinga OU.

*Marquez's April 16, 2014, responses to PAC's Special Interrogatory Nos. 1-3*: Interrogatory No. 1 asked specifically about how Marquez had been exposed to asbestos FROM PAC. Marquez's response again referenced the mountain superfund sites but not the Coalinga OU.

Interrogatory No. 2 asked about Marquez's exposure to asbestos on PAC property. Again, Marquez's response identified the mountain superfund sites but not the Coalinga OU.[1]

Interrogatory No. 3 asked Marquez to identify evidence supporting his negligence claim against PAC. Marquez's response did not refer to the Coalinga OU.

On April 25, 2014, Marquez provided Amended Responses to PAC's First Set of Special Interrogatories. As before, Marquez's responses to Special Interrogatory Nos. 1 and 2 did not refer to the Coalinga OU.

However, in his April 25, 2014 amended response to Special Interrogatory No. 3, for the first time, Marquez listed documents relating to the Coalinga OU, including an "EPA Record of Decision [for the Coalinga OU]," and EPA documents that may contain discussion of that agency's analysis of air and soil samples taken in and/or near the City. Marquez also identified trial and deposition testimony of a witness in a 2012 asbestos-related personal injury action involving

---

[1] Later, counsel for Marquez claimed its failure to refer to PAC's role as an owner or operator of the Coalinga OU in response to this interrogatory was the result of an inadvertent error by an inexperienced associate at its firm.

5

the same mountain and Coalinga OU superfund sites,[2] and deposition testimony of two other witnesses from that litigation.

On July 15, 2014, the week after the matter was remanded, Marquez propounded Special Interrogatory No. 20, in which he asked if PAC claimed it had "never STORED ASBESTOS within the [Coalinga OU]"? On August 14, 2014, PAC responded that neither it nor SPLC had ever stored asbestos at the Coalinga OU, and it was unable to produce documents to support its answer, because it could not "prove a negative."

On July 16, 2014, Marquez served a notice of deposition seeking testimony from PAC's PMQ. This notice requested testimony and documents regarding PAC's (and/or SPLC)'s real property interests in the Coalinga OU.

On August 14, 2014, Marquez provided his verified response to PAC's Supplemental Interrogatory requesting that he review his earlier responses and

---

**2**     Apparently, the same firm that represented Marquez here had represented another client in a previous asbestos-related personal injury action, *Smith v. BNSF Railway Company, et al.* (June 26, 2012) case No. RG 12623812 (the *Smith* action), filed against U.Pac.R.R. and PAC, among others. In that action, PAC was sued as to the mountain site only, while U.Pac.R.R. was sued only as to the Coalinga OU. Marquez's attorneys argued that, although U.Pac.R.R. conceded in the *Smith* action that it owned most of the Coalinga OU (through its predecessor, SPTC), it also claimed (in a stipulation read into the record in the *Smith* action) that PAC's predecessor, SPLC, also owned property that formed part of the Coalinga OU superfund site. PAC was not a party to that stipulation.

The witness was Richard Gooch, Director of Special Properties for the real estate department of Union Pacific Railroad (U.Pac.R.R.) in 1981, who worked for SPLC, which apparently handled some of SPTC's real property transactions. Marquez argued that it was Gooch who testified at deposition in the *Smith* action, as U.Pac.R.R.'s person most qualified (PMQ), regarding SPLC's partial ownership of the Coalinga OU. Marquez claims he relied on this information to support his premises liability claim against PAC as to the Coalinga OU. The record does not include excerpts of Gooch's deposition testimony, nor does it identify the specific subjects for which he was designated PMQ.

6

provide any new or additional information responsive to its previous interrogatories. In a Supplemental Response to Interrogatory No. 3, Marquez listed several documents not previously identified, including EPA reports regarding the establishment of the Coalinga OU superfund site, but did not otherwise refer to the Coalinga OU. Marquez concluded by stating that, "[o]ther than as noted above, there [were] no changes to" the interrogatory responses he had provided in mid-April 2014.

*The Summary Judgment Motion*

On July 24, 2014, while discovery was ongoing, PAC moved for summary judgment. Given the narrow focus of this appeal, we again restrict our discussion of that motion to matters related to the Coalinga OU.

PAC's motion for summary judgment did not include a single reference or argument related to the Coalinga OU. Marquez's opposition did. Marquez pointed to disputed fact No. 5 in his separate statement and asserted that evidence showed that at least part of the Coalinga OU was owned by PAC's predecessor, SPLC, and that contamination of that superfund site was associated with asbestos storage, handling and shipping operations conducted on PAC' s property at the mountain superfund site. In support of this contention, Marquez relied on EPA reports from 1989 and 2006, and a 1912 deed conveying what he claimed later became part of the Coalinga OU.

In its reply, filed on August 14, 2014, PAC urged the court to reject Marquez's assertion—raised for the first time in opposition to the summary judgment motion—that PAC owned property inside the City which was a source of asbestos exposure. PAC argued that the Coalinga OU had been owned by U.Pac.R.R., a fact known to Marquez who had sued U.Pac.R.R. over that very

7

property in this action, and whose attorneys had sued U.Pac.R.R. as to that same superfund site on behalf of a different client several years before in the *Smith* action.[3] Further, PAC noted that a map affixed to the 1912 deed by which Marquez claimed land was purportedly conveyed to SPLC, showed the land actually had been conveyed to *SPTC* (U.Pac.R.R.'s predecessor). PAC also noted that evidence produced by Marquez in this litigation reflected that the EPA had looked to SPTC and later, U.Pac.R.R.—not SPLC—to undertake remediation efforts at the Coalinga OU. In sum, PAC argued that the aged deed and EPA documents on which Marquez relied fell far short of establishing PAC's liability.

The summary judgment motion was denied on September 4, 2014. There is no transcript of the hearing on the motion, and the record contains only a cursory minute order that does not reveal the basis for the ruling.

*Marquez's Untimely Supplemental Interrogatory Response*

Meanwhile, on August 19, 2014, Marquez had served PAC with a (second) Supplemental Interrogatory Response. Marquez's supplemental response was served two weeks before trial, and the day after discovery closed. For the first time in this litigation, Marquez affirmatively stated that he planned to proceed against

---

[3] PAC also pointed out that Marquez presented an incomplete copy of the 1912 deed. The portion he omitted showed that, in conveying the land in 1912, So.Pac.R.R. actually retained ("excepting and reserving from the foregoing conveyance") 100 feet on either side of the railroad tracks plus area used for maintenance and operations. PAC argued that the land excluded from the conveyance included the remediated property Marquez now falsely claimed SPLC had acquired.

PAC at trial on two theories: exposure to asbestos emanating from the Coalinga OU superfund site in addition to the mountain superfund site.[4]

*PAC Files Motion in Limine No. 30*

On September 9, 2014, PAC filed its "Motion *in Limine* No. 30 to Preclude [Marquez] from Offering Argument or 'Evidence' that [PAC] Owned or Operated the 107 Acre Property in the City of Coalinga" (MIL or motion in limine). PAC argued that any reference to its alleged ownership or operation of the Coalinga OU would be false and should be prohibited as U.Pac.R.R. had admitted it owned that property during the relevant time period (1959-1972), and Marquez had never before tried to link his asbestos exposure to PAC's ownership or control of the Coalinga OU or any property other than the mountain superfund sites. Moreover,

---

[4]    Specifically: "The second source of [Marquez's] exposure originated from property owned by . . . PAC . . . which consisted of approximately half of . . . [the Coalinga OU]. PAC leased its property in downtown Coalinga to various entities active in the milling, manufacture, storage and/or transportation of asbestos materials during the time [Marquez] resided in Coalinga . . . . During investigation of the . . . Johns-Manville Mill Area, the EPA conducted an airborne asbestos sampling program in which high asbestos levels were measured in the City of Coalinga and soil sampling of the 107-acre of land (part of which was owned by PAC) showed high levels of asbestos contamination. Further investigation revealed that asbestos had been transported from the mines and mills to storage areas within the [Coalinga OU] for handling and shipment. Contamination of the southern portion of the [Coalinga OU] (which was owned by PAC) was associated with storage, handling and shipping operations conducted at the Johns-Manville Mill area (also owned by PAC). Piles of raw asbestos ore were found on a nine-acre portion of PAC's property. [Marquez] was exposed on a daily basis from 1962 to 1972 as a result of living, playing, biking, and working in the area at or near the asbestos-contaminated property owned by PAC located within the [Coalinga OU]."

9

PAC argued that Marquez's attorneys engaged in abusive litigation tactics in that they reached settlements in this and the *Smith* action with U.Pac.R.R. on behalf of Marquez and another client specifically as to the Coalinga OU, and engaged in abusive litigation tactics by redacting communications between the EPA and U.Pac.R.R. to conceal the fact that U.Pac.R.R. confirmed its ownership of the Coalinga OU.[5] Accordingly, PAC insisted that Marquez's untimely asserted claim as to its purported ownership interest in the Coalinga OU "would be highly prejudicial and irrelevant." (Evid. Code, §§ 350, 352.)

*The Hearing on the Motion in Limine*

The MIL was argued over the course of three days. During that hearing, the bases for PAC's effort to exclude evidence regarding Marquez's claim that PAC had an ownership interest in the Coalinga OU shifted. Court and counsel focused primarily on PAC's claim that, due to the eleventh hour disclosure in Marquez's untimely supplemental interrogatory response, PAC had been "sandbagged" and would be "severely prejudiced" if the court permitted Marquez to proceed to trial on his late-disclosed theory that PAC (or SPLC) had an ownership interest or management role in the Coalinga OU without giving PAC an opportunity to prepare to meet that claim.

---

[5]    Marquez's attorneys quickly put this allegation to rest and revealed not only that the purportedly redacted materials had been produced in August 2014 in unredacted form, but also that the redactions about which PAC complained had been performed pursuant to a December 2012 court order for reasons unrelated to this litigation.

Even though Marquez's new theory was not asserted until the day after discovery closed, the court did not find that his attorneys intentionally misled PAC. It did find, however, that PAC was prejudiced by Marquez's belated disclosure.

Specifically, the trial court stated:

> "Why isn't this a situation – because it sure looked like it to me – where – I'm not saying this was an intentional thing. But it sure seems to me that [PAC has] been lulled into defending only one property. And then less than a month ago, [PAC was] put on written notice, at least, that [it was] being forced to defend against another property.
> "And in a case that's this complicated . . . , I'm not surprised that there's going to be some real prejudice to the defendants on this.
> "Even if they knew back then that, 'Well, maybe we own it. Maybe we don't. Maybe they think we do. Maybe we don't. But let's ask them what they're suing us about.' And they're told in April, 'Well, we're only going after you for the mine.' 'Okay. Great. So now we defend against the mine.'
> "And then even in a supplemental response in August, 'By the way, do you have any new responses?' And they get the response back. 'No. Same responses.' 'Okay. Good. So it's just the mine.' And then August 19th, now it's a completely different property. It's hard for me not to imagine that there's some real prejudice in their ability to defend that."

The court concluded that PAC was entitled to additional time to prepare to defend Marquez's newly asserted theory, and proposed that the trial be continued briefly. PAC said it would need 60-to-90 days to conduct additional depositions and discovery. Because Marquez had been granted trial preference for health-related reasons, the court required his concurrence to continue the trial. Concerned that Marquez might die if the trial were postponed as long as three months, Marquez's lead counsel conditioned his client's agreement to a continuance on PAC's agreement not to argue that the claim for pain and suffering

11

damages terminated in the event Marquez died before the case went to trial. PAC declined to agree to this condition.

Finding PAC's claim of unfair surprise well-taken, the trial court granted the motion in limine and excluded any evidence of liability based on the theory that PAC owned all or part of the Coalinga OU.

*The Jury Trial*

Marquez proceeded to trial against PAC solely on the theory that he had been exposed to asbestos fibers from the Johns-Manville mine and mill, in the mountains 17 miles outside of the City.[6]

The jury found Marquez had been exposed to asbestos from PAC's mountain property as a result of mining, milling and other operations. However, it found such exposure was not a substantial factor in contributing to Marquez's risk of developing mesothelioma. Judgment was entered in favor of PAC.

This timely appeal followed the trial court's denial of Marquez's motion for a new trial.

**DISCUSSION**

Marquez's principal contention on appeal is that the trial court abused its discretion in granting PAC's motion in limine, precluding him from offering evidence that PAC (through its corporate predecessor) had an ownership interest in

---

[6] PAC rested its case immediately after Marquez rested his. The court granted PAC's motion for a directed verdict as to the claim for strict liability and as to punitive damages, but denied the motion as to the negligence claim.

the Coalinga OU. He also argues that the court erred in denying his motion for a new trial. Neither contention has merit.

1. *Controlling Legal Principles and the Standard of Review*

Typically, a motion in limine is an evidentiary motion brought on the threshold of trial by which a movant seeks to exclude arguably inadmissible and highly prejudicial evidence bound to come up at trial in an effort to "'avoid the obviously futile attempt to "unring the bell"'" once that evidence has been offered at trial and ordered stricken. (See *People v. Morris* (1991) 53 Cal.3d 152, 188 (*Morris*), disapproved on other grounds by *People v. Stansbury* (1995) 9 Cal.4th 824, 830, fn. 1; *Pellegrini v. Weiss* (2008) 165 Cal.App.4th 515, 530.) Motions in limine minimize trial disruptions, and promote efficiency by permitting the thoughtful resolution of potentially difficult evidentiary issues at the outset, in a manner that may not be possible under the time constraints and pressures of trial. (*Morris, supra*, 53 Cal.3d at p. 188; *Kelly v. New West Federal Savings* (1996) 49 Cal.App.4th 659, 669–670 (*Kelly*).)

The authority for such motions is well-established in practice and case law. (See e.g., *Morris, supra*, 53 Cal.3d at p. 188; *Greer v. Buzgheia* (2006) 141 Cal.App.4th 1150, 1156.) Trial courts possess an "'inherent power to control litigation before them'" and "'"to exercise reasonable control over all proceedings connected with pending litigation."'" [Citation.]" (*Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1351 (*Elkins*); *People v. Suff* (2014) 58 Cal.4th 1013, 1038 (*Suff*) [same].) Although this judicial power does not arise from a statute (*Bauguess v. Paine* (1978) 22 Cal.3d 626, 635), statutes do acknowledge the trial court's authority to entertain such motions by virtue of its inherent power to "provide for the orderly conduct of proceedings," and "control its process and orders so as to

make them conform to law and justice." (Code Civ. Proc., §§ 128, subds. (a)(3) & (a)(8).) To that end, judicious use of motions in limine enables trial courts to exclude irrelevant evidence (Evid. Code, § 350); exclude evidence the probative value of which is substantially outweighed by the probability that its admission will consume undue time or create a substantial danger of undue prejudice, confusion of issues, or mislead the jury (Evid. Code, § 352); and carefully consider and determine questions of admissibility of evidence outside the jury's presence (Evid. Code, § 402, subd. (b)). A trial court may also use this inherent authority to prevent such things as "ambush" or other "unfair results" stemming from "abus[ive]" litigation tactics, and to promote fair process. (*People v. Bell* (2004) 118 Cal.App.4th 249, 256; *Peat, Marwick, Mitchell & Co. v. Superior Court* (1988) 200 Cal.App.3d 272, 287–288, 290 (*Peat*)).

Here, as in most cases, the trial court's ruling on a motion in limine is reviewed for abuse of discretion. (*Children's Hospital Central California v. Blue Cross of California* (2014) 226 Cal.App.4th 1260, 1277.)[7] This sets the bar high for an appellant: we will not reverse a ruling on a motion in limine absent a clear demonstration of an abuse of discretion. (See *People v. Mincey* (1992) 2 Cal.4th 408, 439; *Mardirossian & Associates, Inc. v. Ersoff* (2007) 153 Cal.App.4th 257, 269; *Nevarrez v. San Marino Skilled Nursing & Wellness Centre, LLC* (2013) 221 Cal.App.4th 102, 118–123.)

---

[7] If the ruling involves a purely legal question, appellate review is de novo. (*Children's Hospital Central California v. Blue Cross of California, supra,* 226 Cal.App.4th at p. 1277.)

14

2.	*Marquez Has Not Demonstrated an Abuse of Discretion*

Marquez argues the trial court abused its discretion in granting PAC's motion in limine because the motion was granted on grounds not stated in PAC's notice.  We disagree.  Not only was formal notice not required, but Marquez forfeited this assertion by failing to raise it until after trial and, in any event, the argument fails on its merits.

A.	*The Court Did Not Err by Granting the Motion on Grounds Not Stated in the Notice*

Marquez insists the trial court erred in granting PAC's motion in limine because the notice of that motion did not specify that unfair surprise was a ground upon which PAC sought relief.  (See Code Civ. Proc., § 1010 [notice of motion must specify "grounds upon which it will be made"]; Cal. Rules of Court, rule 3.1110(a) [notice of motion must identify nature of order being sought and the grounds for its issuance].)  Marquez is mistaken.

Motions in limine are not subject to typical law-and-motion notice requirements.  Indeed, procedures governing motions in limine vary among courts and motions in limine are commonly entertained with no written notice at all.  (See e.g., Cal. Rules of Court, rule 3.1112(f) [a motion in limine "need not be accompanied by a notice of hearing," and the requirements regarding the timing, place of filing and service of such motions are subject to trial court discretion].)

B.	*Marquez Forfeited his Argument by Failing to Object or Make an Offer of Proof at the Hearing*

Further, Marquez never objected before or during the three-day hearing that the notice of or motion in limine failed to specify "unfair surprise" as one of its

15

bases, nor did any of his attorneys object when called upon by the court to address that issue. Indeed, Marquez waited until he filed a motion for a new trial in November 2014 to assert an objection on this ground. By remaining silent, Marquez forfeited any claim that the motion in limine was deficient.

Moreover, if Marquez believed that the trial court erred by ruling on PAC's motion in limine on an issue improperly "raised without prior notice," and that the ruling had the effect of permanently excluding relevant evidence, it was incumbent on his counsel to, at a minimum, make a formal offer of proof on the record. "[A] verdict or judgment will . . . be set aside for erroneous exclusion of evidence unless the 'substance, purpose and relevance of the excluded evidence was made known to the court by . . . offer of proof or by any other means.' [Evid. Code, § 354, subd. (a)]." (Wegner, et al, Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2015) ¶¶ 4:305–4:306, pp. 4-83 to 4-84.) A timely, specific and detailed offer of proof is necessary in order to preserve a claim of prejudicial error based on the exclusion of evidence. (See *McCleery v. City of Bakersfield* (1985) 170 Cal.App.3d 1059, 1072–1075; *Semsch v. Henry Mayo Newhall Memorial Hospital* (1985) 171 Cal.App.3d 162, 167–168.) Marquez failed to make an offer of proof with regard to the effect on his case of the court's exclusion of any reference at trial regarding PAC's purported ownership interest in the Coalinga OU. His assertion of error on this ground is forfeited.

C. *There is No Merit to the Argument That Marquez Was Denied an Opportunity to Oppose PAC's Claim of Surprise*

Assuming, for argument's sake, that Marquez did not forfeit his due process argument, the argument still fails on its merits. Marquez cannot legitimately contend that he was denied a reasonable opportunity to respond to PAC's claim of

unfair surprise.  The hearing on the motion in limine took place over the course of three days.  Throughout the hearing, Marquez was represented by as many as three attorneys who engaged in a lengthy and thorough discourse with the court on the merits of PAC's contention that Marquez should be precluded from offering evidence that PAC or its predecessor had an ownership interest or a role in management of the Coalinga OU.  None of these attorneys claimed Marquez was placed at a strategic or any disadvantage because PAC's motion in limine seeking to exclude this evidence had not specified surprise among its bases.

Marquez relies primarily on *St. Paul Fire & Marine Ins. Co. v. Superior Court* (1984) 156 Cal.App.3d 82, 85 (*St. Paul*), and *Kelly, supra,* 49 Cal.App.4th at pages 676–678, to argue the court erred in entertaining PAC's motion on grounds not specifically asserted in advance.   Neither case supports his assertion.

*St. Paul* involved an insurance dispute in which the parties agreed that the two plaintiffs would be deposed first, followed by the depositions of defendants' representatives.  (156 Cal.App.3d at p. 84.)  The first plaintiff's deposition was still pending (after 12 sessions), when plaintiffs' counsel notified defendants' counsel late one afternoon that he intended to file an ex parte application for a protective order the next  morning.  (*Ibid*.)  Plaintiffs' attorney informed defendants' counsel that, notwithstanding the parties' agreement, plaintiffs intended to seek an order concluding or suspending the pending deposition and prohibiting the deposition of the other plaintiff, because the plaintiffs' deposition had caused and would continue to cause severe hardship to the plaintiffs' familial responsibilities.  (*Ibid*.)  Defense counsel appeared the next day to advise the court defendants opposed the request, to remind the court that it was statutorily precluded from resolving the issue on an ex parte basis, and to present defendants' counterdeclaration.  The court refused to consider defendants' objections.  (*Ibid*.)  Less than an hour after

plaintiffs submitted the application, the court issued an ex parte protective order terminating the pending deposition, barring defendants from deposing the remaining plaintiff without a court order, and permitting plaintiffs to depose defense witnesses. (*Id*. at p. 85.) The appellate court issued a peremptory writ ordering the court to annul the protective order. (*Ibid*.) The court found that the protective order was sought and entered in violation of a discovery statute that specifically required a noticed motion and hearing in such circumstances. (*Ibid*. [under former Code Civ. Proc., § 2019, subd. (d), in case of pending deposition, a noticed motion was required in order to seek protective order].)

Here, by contrast, PAC did not renege on an agreement with Marquez, did not seek ex parte relief and served a noticed motion in limine in advance of the days-long evidentiary hearing. Moreover, Marquez was well-represented by counsel at that hearing, during which the merits of the motion and possible resolutions—none of which was dictated by statute—were thoroughly addressed by the court and counsel, before the motion was granted.

*Kelly, supra*, 49 Cal.App.4th 659, is similarly inapposite. There, a trial court heard argument on a motion in limine purportedly addressed to the question whether the scope of an expert witness' proffered trial testimony exceeded opinions to which he had testified at deposition. (*Id*. at p. 678.) At the hearing on the motion in limine, the defendant shifted the focus of the motion and the court ultimately ruled on an independent issue regarding the expert's competence to testify *at all*. (*Ibid*.) On appeal, this court found the plaintiff had been unable adequately to defend herself because her counsel had no reason to expect this issue would arise, and had not arranged for the expert to attend the hearing. (*Id*. at pp. 676–677.) We found overreaching by defense counsel and an abuse of discretion by the court. (*Id*. at p. 677.)

18

This case is different. Unlike *Kelly,* the court's thorough exploration of the issues never shifted the fundamental premise of PAC's motion. From the outset, the thrust of the motion in limine was whether grounds existed to preclude Marquez from arguing or offering evidence at trial that PAC had an ownership interest or role in the operation of the Coalinga OU. Marquez's attorneys had a full and fair opportunity to address the issue of whether PAC could legitimately claim surprise that its (or its predecessor's) ownership of that 107-acre parcel would be at issue during trial.

3. *The Record Supports the Court's Conclusion that PAC was Prejudicially and Unfairly Surprised*

Finally, Marquez argues that the record refutes PAC's claim that it did not know before August 19, 2014 that its potential role as an owner or operator of the Coalinga OU would be at issue at trial. He insists this cannot be the case for two reasons. First, in July 2014, he served discovery aimed, in part, at discovering the nature and extent of PAC's interest in the Coalinga OU. Second, in opposition to the summary judgment motion, he produced evidence raising a factual dispute about PAC's ownership of the Coalinga OU.[8]

---

[8]   Marquez also argued PAC was aware of his theory before August 19, 2014, because he never "disclaimed" reliance on the theory that PAC owned all or part of the Coalinga OU in any discovery response he served in April or mid-August 2014. But the whole purpose of the discovery PAC served was to identify theories of liability on which Marquez planned to proceed at trial and to avoid the very sort of "surprise" at issue here. Marquez had an obligation to timely present PAC with his legal theories of liability during the discovery process. (See, *Thoren v. Johnston & Washer* (1972) 29 Cal.App.3d 270, 274 [a principal purpose of discovery is to eliminate the "sporting theory" of litigation where a party is surprised at trial].)

19

However, in its reply to Marquez's summary judgment opposition, PAC argued that Marquez's belated assertion was the equivalent of a "hail Mary" pass, in light of the fact that, among other things, he had sued U.Pac.R.R. in this litigation as to that very same property, and his attorneys had sued U.Pac.R.R. in the *Smith* action as to the same property on behalf of another client.

Further, a week after filing his opposition to PAC's summary judgment motion, Marquez provided his verified response to PAC's supplemental interrogatory seeking updated information and unequivocally affirmed there were "no changes" to his pertinent earlier responses, none of which mentioned PAC's role in the ownership or operation of the Coalinga OU.

Based on this evidence and careful consideration of the parties' interests, the trial court concluded that PAC had made every legitimate effort available under discovery procedures, and under the press of time given the trial preference setting, to prepare its defense to the theory and evidence PAC justifiably expected Marquez to present at trial. As a result, the court found that PAC was entitled to rely on Marquez's consistent, unequivocal discovery responses regarding the facts which had allegedly given rise to PAC's liability. Even if, as Marquez asserts, PAC may have had independent knowledge of facts relating to a potential claim Marquez may have asserted regarding the Coalinga OU, it does not follow that the court abused its discretion in determining that PAC was misled to its detriment. In light of Marquez's discovery responses, PAC reasonably concluded that Marquez made a strategic decision to not pursue a claim against it related to that property.

4. *The Court Did Not Impose a Discovery Sanction*

Marquez contends the trial court exceeded its authority by ordering an evidentiary or discovery "sanction" excluding evidence without making the requisite finding that his counsel engaged in willful misconduct. Not so.

The court's ruling was not made to punish Marquez's counsel for purposeful misconduct, and the order excluding evidence was neither requested nor made as a discovery sanction. The trial court believed the explanation by Marquez's counsel that they did not intentionally provide PAC with misleading discovery responses. Rather, the mistake was the result of an oversight on the part of an inexperienced associate at counsel's firm.

However, by admitting that the omission of references to the Coalinga OU from its discovery response was a "mistake," Marquez's counsel effectively conceded that the discovery responses were indeed misleading if they intended to pursue a claim against PAC related to the Coalinga OU. Thus, even though the court did not find that Marquez's counsel acted *willfully* to deceive PAC, the court nonetheless was well within its power to implicitly find that counsel's conduct did constitute litigation abuse requiring a remedy, in the sense that the pretrial discovery process did not function as intended. Marquez's belated disclosure of the full extent of his claims and trial theories posed a legitimate and practical difficulty for PAC on the eve of a trial estimated to last two months. Thus, although an oversight explained the mistake, the failure of Marquez's counsel to notice and rectify that mistake earlier (particularly in light of the fact that PAC had served Marquez with supplemental discovery before the cut-off specifically requesting updated or new information) was at least negligent. That negligence prevented PAC (despite conducting proper discovery) from learning the full extent of Marquez's theories and the facts it could expect to face at trial until it was too

21

late to conduct meaningful discovery. The trial court reasonably concluded that the situation justified a remedy to preserve PAC's right to a fair trial.

We reject Marquez's characterization that the court imposed an "evidentiary sanction" because he purportedly abused the discovery process. In fact, the court did not impose an evidentiary sanction at all, at least not in a traditional sense. Initially, the court was not inclined to preclude Marquez from pursuing his premises liability theory based on the addition of the Coalinga OU. Rather, in a concerted and reasoned effort to balance the parties' interests, the court suggested that a brief continuance for additional discovery was the fairest way to permit Marquez to proceed on, and PAC to defend against, the belatedly-disclosed theory of liability. Apparently for strategic reasons and because of their client's terminal illness, Marquez's counsel refused to agree to a continuance unless PAC agreed that emotional distress damages would survive if Marquez died before trial. PAC reasonably declined to accept this condition.

Absent Marquez's consent, the trial court was powerless to order the continuance it believed was in order. The decision made by Marquez's counsel was understandable. The decision made by PAC's counsel was equally understandable. Nevertheless, the dilemma facing the trial court was caused entirely by the negligence of Marquez's counsel in its provision of misleading discovery responses. PAC cannot be faulted for rejecting the condition Marquez imposed in order to obtain his agreement to a continuance. It was Marquez who requested trial preference. And it was Marquez who was responsible, albeit unintentionally, for the situation that required a continuance of the preferential trial date. Thus, PAC reasonably determined that Marquez should bear the legal consequences of the continuance, including the potentially significant consequence

22

of losing his claim for emotional distress damages in the event Marquez should die before trial.

Marquez's strategic decision to preserve his right to trial preference (coupled with any emotional distress damages a jury might award) essentially forced the court's hand; in order to ensure PAC's right to a fair trial, the court had to exclude Marquez's belatedly revealed theory related to Coalinga OU. Viewed in this context, the court's ruling was not an evidentiary sanction at all. Rather, it was a proper exercise of the trial court's inherent authority to control the proceedings and ensure a fair trial. Trial courts possess an "'""inherent power to control litigation before them[, and to] exercise reasonable control over all proceedings connected with pending litigation."'"" (*Elkins, supra*, 41 Cal.4th at p. 1351; *Suff, supra*, 58 Cal.4th at p. 1038.) Without question, this power includes the "inherent power to exclude evidence to ensure a fair and orderly trial" by excluding evidence in order "to prevent the taking of an unfair advantage and to preserve the integrity of the judicial system." (*Peat, supra,* 200 Cal.App.3d at p. 289; *Stephen Slesinger, Inc. v. Walt Disney Co.* (2007) 155 Cal.App.4th 736, 763 [trial court has inherent power to control litigation abuse; that power is supplemented, not supplanted by court's power to impose discovery sanctions].)

5. *The Trial Court Did Not Err in Denying the Motion for a New Trial*

Based on the same arguments made above, Marquez maintains the trial court abused its discretion in denying his motion for a new trial. (Code Civ. Proc., § 657, subds. (1), (7).) For the reasons discussed above, we disagree.

23

## DISPOSITION

The judgment is affirmed.  Respondent PAC Operating Limited Partnership is awarded its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, Acting P. J.


We concur:



MANELLA, J.



COLLINS, J.

24