Filed 9/23/16  Platero v. BRK Brands CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ISMENIA PLATERO, et al., | B264919 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC445557) |
| v. | |
| BRK BRANDS, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Elizabeth R. Feffer, Judge.  Reversed.

Law Office of Martin L. Stanley, Martin Louis Stanley; Esner, Chang & Boyer, Stuart B. Esner, Joseph S. Persoff, for Plaintiffs and Appellants.

Arent Fox, Gary Wolensky, Anne Marie Ellis; Cozen O'Connor, Robert W. Hayes, Jillian T. Flax, for Defendant and Respondent.

_____

Plaintiffs and appellants Ismenia Platero and Ronald Marroquin appeal from a judgment entered in favor of defendant and respondent manufacturer BRK Brands, Inc., following an order excluding the plaintiffs' expert testimony in this product liability action. On appeal, Platero and Marroquin contend: 1) the trial court abused its discretion by granting motions in limine that terminated their case solely because their oppositions to the motions were filed late, 2) the motions should have been denied on their merits, and 3) their motion for relief under the Code of Civil Procedure section 473[1] should have been granted. We conclude that under the circumstances, the trial court abused its discretion by imposing the equivalent of terminating sanctions without first considering the imposition of less severe sanctions for the untimely opposition papers. We reverse.

## FACTS AND PROCEDURAL BACKGROUND

### Allegations of the Complaint

The original complaint in this case was filed on September 14, 2010. Platero and Marroquin filed the operative second amended complaint on November 29, 2011, against multiple defendants, including BRK as a Doe defendant. The complaint alleged causes of action against BRK for negligence, products liability, wrongful death, and premises liability as follows. On August 12, 2010, a candle caused a bedroom fire, killing plaintiffs' 15-year-old twins Erick and Edward Marroquin. The smoke detector in the apartment never sounded. BRK negligently developed, manufactured, marketed, and distributed the defective smoke detector.

### Proceedings Prior to Final Status Conference and Trial

In July 2012, defendants other than BRK brought motions to compel plaintiffs'

_____

[1] All further statutory references are to the Code of Civil Procedure, unless otherwise stated.

responses to interrogatories, which plaintiffs did not oppose and the trial court granted. By August 2013, all of the defendants other than BRK had settled with the plaintiffs or had summary judgment entered in their favor. On August 30, 2013, plaintiffs failed to appear at a trial setting conference and the trial court set an order to show cause for dismissal or sanctions. The minute order reflects that plaintiffs' counsel joined the court-call line later and was told the matter had already been heard.

Platero and Marroquin submitted attorney Gilbert Geilim's declaration in response to the order to show cause. Geilim declared that he was at a convention for consumer attorneys in Las Vegas from August 28 through September 1, 2013. Co-counsel Martin Stanley was aware Geilim was out of town and planned to appear for the trial setting conference. Stanley was diagnosed with pneumonia and could not attend, but Geilim did not receive that information until he had left a seminar and it was too late for him to make an appearance.

BRK brought a motion for summary judgment, or in the alternative, summary adjudication. On October 30, 2013, the trial court found triable issues of fact existed and denied the motion. On November 26, 2013, plaintiffs served an unusually large number of poorly phrased discovery requests, attempting in part to address issues raised during the summary judgment proceedings. Responses were due on New Year's Eve, but the plaintiffs agreed to an extension of the deadline. BRK sought a protective order limiting plaintiffs' written discovery, which the trial court granted in part and denied in part.

The parties were unable to depose expert witnesses by the June 2, 2014 deadline. On July 28, 2014, Platero and Marroquin filed a joint ex parte application for a fourth continuance of the trial date, which was stipulated to by the parties. Attorney Geilim submitted his declaration stating that plaintiffs' lead trial counsel was beginning a complex trial in August 2014, and BRK's counsel was scheduled to start a trial in September 2014. Attorney Jeffrey Lamb, who was the lead associate, had been attending to his family for several weeks and had been unable to work on any cases due to the suicide of his brother's fiancé. Geilim had been out of the office as well, due to surgery following an auto accident. He required additional surgery in September 2014.

3

At a hearing on the ex parte application on July 28, 2014, Judge Robert Hess noted that both parties expressly represented that they would be available and ready for trial on the rescheduled date without fail. Judge Hess continued the final status conference to April 15, 2015, and the trial date to April 21, 2015. He stated that no further continuances would be granted for any reason unless initiated by the court.

On March 20, 2015, BRK filed an ex parte application to continue the trial date, which Judge Elizabeth Feffer denied without hearing argument. On March 23, 2015, BRK filed 11 motions in limine, including a motion to exclude or limit the testimony of electrical engineering expert B. Don Russell and preclude him from testifying at trial. Russell teaches electrical engineering at Texas A&M University. In a declaration, he stated that he had conducted experiments showing differences in the detection capabilities of two types of smoke detectors based on the nature of the fire conditions. Ionization smoke detectors like the one in Platero's apartment require sufficient smoke levels and a minimum velocity across the face of the detector. Photoelectric detectors, which are the other type available on the market, respond to the level of smoke and are less sensitive to the movement of the smoke.

BRK argued that Russell lacked the qualifications to conduct scientifically reliable testing of the response times of smoke alarms to determine whether the performance characteristics made it an adequate safety device. He is not an expert in fire protection engineering or combustion science. His opinion that ionization smoke alarms were inadequate required an assessment of the movement of fires under the circumstances, the tenability of the premises, and the human reaction times, for which he was not qualified. Russell has conceded that fire protection engineers, not electrical engineers, are qualified to certify fire alarm and suppression systems, to design building to assure compliance with fire codes, and to undertake fire risk analyses.

BRK also argued that the accepted methodology for determining the appropriateness of a smoke alarm was whether it reliably provided adequate escape time. Russell had focused solely on the response times of different types of alarms to smoldering combustion fires and did not consider whether the escape time provided by

4

ionization smoke detectors was adequate. He had not demonstrated a consistent performance difference between photoelectric and ionization smoke alarms. Reputable task groups have rejected Russell's methodology and his conclusion that ionization smoke alarms are inadequate, finding instead that smoke alarms using either smoke detection technology provide acceptable response times for smoldering fires.

In addition, Russell lacked the qualifications to determine why the device in the boys' bedroom failed to respond. His opinions about whether the alarm failed to sound because of either a manufacturing defect or insensitivity to smoke were inherently speculative. BRK argued that there were many other reasons that the alarm did not sound, including that Platero disabled it or it was improperly installed, maintained, or damaged. Moreover, there was no causation between the alleged defect and the harm in this case. Under his own theory, there was a flame component that should have sounded the alarm. In support of the motion to exclude Russell's testimony, BRK submitted the declaration of its fire protection engineering expert and copies of task force reports.

BRK filed one additional motion in limine on March 26, 2015, seeking to exclude or limit the testimony of fire protection engineering expert Christopher Lautenberger on the ground that his opinions were speculative. Platero had testified in her deposition that she woke up around 1:00 a.m. when she heard screaming and went to the boys' room. Lautenberger assumed in his deposition testimony that the boys failed to respond to Platero when she entered their bedroom and found a flaming fire, because they had been incapacitated by toxic gases. He modeled two possible scenarios in which the wax from the candle on their dresser may have ignited a fire which smoldered for a long period of time before becoming a flaming fire. In his opinion, the smoldering fire would have generated sufficient toxic gases to incapacitate the boys. BRK argued, however, that Lautenberger's assumption that the boys were incapacitated by toxic gases was inconsistent with Platero's deposition testimony that the door to the bedroom was partially open, and that she could not see them, but one of the boys yelled at her from the bed through the smoke. The toxicologist testified that the boys likely died from soot inhalation, and there was no evidence of the amount of soot generated by different types

5

of fires. Lautenberger's modeling does not support his opinion that the boys would have been incapacitated from thermal injuries in a flaming fire before incapacitating levels of toxic gases were reached. His opinion that a smoke alarm would have sounded in time for the boys to escape was speculative. BRK filed copies of Platero's deposition testimony and other evidence to support the motion to exclude the Lautenberger's testimony.

Platero and Marroquin filed oppositions to the motions in limine on April 14, 2015. In their opposition to the motion to exclude Russell's testimony, they argued that the scope of the motion was vague and overbroad. Although Russell was not a combustion science expert, he was relying upon Lautenberger's expert testimony about the type of fire in this case. The issues raised in BRK's motion went to the weight and not the admissibility of Russell's testimony, and the in limine motion seeking to exclude Russell's testimony in its entirety amounted to a motion for summary judgment.

In their opposition to the motion to exclude Lautenberger's testimony, they argued that Lautenberger's opinions were based on Platero's testimony and the fire report. Lautenberger had stated his opinion that it was a smoldering fire within the degree of certainty required for expert testimony. The motion was vague and overbroad, because it failed to identify any particular testimony to exclude and attempted to exclude the entirety of Lautenberger's testimony, which would unfairly hinder the plaintiffs' ability to present their case and amounted to a motion for summary judgment. Platero and Marroquin submitted the deposition testimony of Platero, Lautenberger, and Russell in support of their opposition to the motions in limine.

On April 15, 2015, BRK filed an ex parte application for terminating sanctions against Platero and Marroquin, or in the alternative evidentiary sanctions, for failing to provide BRK with any of their trial exhibits. BRK sought evidentiary sanctions, including exclusion of the plaintiffs' exhibits, concession to the authenticity and admissibility of BRK's exhibits, and an opportunity to amend BRK's pre-trial filings. BRK noted that plaintiffs filed their opposition to BRK's motions in limine two weeks after the statutory deadline of April 2, 2015, and as late as 4:30 p.m. on the day before the

6

hearing on the motions.

## Final Status Conference and Trial

Judge Feffer considered the ex parte application and the motions in limine at the final status conference on April 15, 2015.  Judge Feffer had not received the plaintiffs' oppositions to the motions in limine.  Stanley represented that he had been in a 3-week trial in Ventura that ended on April 2 or 3, 2015, and he then left on a prescheduled vacation to visit colleges with his daughter before she made her final decision.  Lamb's wife had a baby on April 4, 2015, and he had been doing his best to complete the trial work while attending to his responsibilities at home.  Geilim had been unable to work the previous week due to a back injury.  The joint witness list, exhibit list, and jury instruction list were all filed on April 10, 2015.  Oppositions to the motions in limine had been filed.  Stanley apologized for being a few days behind with a few items.

During the hearing, Judge Feffer received the oppositions that had been filed with the court the day before.  She asked if plaintiffs were ready to try the case and Stanley answered yes.  He had expected to argue the motions in limine on the first day of trial, but he was prepared to argue the motions and try the case immediately.

BRK's counsel Gary Wolensky noted that all but one of BRK's motions in limine were filed by March 24, 2015, which was the deadline specified under the superior court's local rules.  Plaintiffs' oppositions to the motions in limine were hand delivered to his office at 4:34 p.m. the previous day and he received a disk with the plaintiffs' exhibits that morning.  BRK was prejudiced, because the plaintiffs had received BRK's pretrial filings a week earlier and BRK was just receiving plaintiffs' information.  BRK sought terminating sanctions or evidentiary sanctions regarding plaintiffs' exhibits as stated in the ex parte application.

Judge Feffer noted that plaintiffs' pretrial filings were not in compliance because they were not jointly prepared.  The court's tentative ruling was to grant the motions in limine, because they were unopposed, but the court would look at the untimely

7

oppositions, allow BRK to file replies, and hear further argument on April 21, 2015. At one point, Stanley became confused about the dates at issue and suggested that he may have been in trial until as recently as April 9, 2015, but stated that he needed to verify the dates. The court also set an order to show cause regarding why Platero and Marroquin should not be precluded from introducing exhibits for failure to comply with local rules.

BRK filed replies to plaintiffs' oppositions to the motions in limine, arguing that the plaintiffs had merely recited general law and failed to meaningfully oppose the motions.

On April 20, 2015, Platero and Marroquin submitted Geilim's declaration in opposition to the ex parte application for sanctions regarding the plaintiffs' exhibits. Geilim declared that he had a back injury on April 1, 2015. His doctor prescribed steroids, strong pain medication, and a week of bed rest, which prevented Geilim from contributing to the preparation work for the upcoming trial in the instant case. However, he met with BRK's counsel on April 17, 2015, to confer on witness lists and exhibits. He never attempted to delay or subvert the legal process.

They also filed Stanley's declaration. Stanley had been mistaken in informing the court that his trial ended on April 3, 2015. He was engaged in a jury trial from March 3 through March 27, 2015. On March 28, 29, and 30, 2015, Stanley and attorney Lamb finalized an appeal due March 30, 2015. On March 31, 2015, Stanley took his 91-year-old father to doctors for tests. Stanley is a divorced parent. He visited colleges with his daughter for two days, then took his father for further testing on April 3, 2015. From April 4 through April 7, 2015, he cared for his father. He visited additional colleges with his daughter from April 8 through April 10, 2015. In his experience, exhibit and witness lists have been modified until the date of trial, and at times, during trial. He did not believe there was any prejudice to any party. In fact, BRK had just added exhibits. Stanley acted in good faith and did his best to comply with the deadlines in the case.

Plaintiffs submitted Lamb's declaration as well. Lamb was the second counsel in the Ventura trial from March 3 through March 27, 2015. On March 28, 29 and 30, he worked with Stanley to finalize the appeal. His wife, who was 38.5 weeks pregnant with

8

their second child, had been experiencing contractions. On March 30, 2015, her obstetrician instructed him to stay as close to home as possible. His wife went to the hospital on April 3, 2015, and gave birth the following day. He assisted her at home and took care of the children afterward. On April 10, 2015, he sent plaintiffs' witness list, exhibit list and proposed joint statement of the case to BRK before 2:00 p.m., which was the date the pretrial filings were due, but BRK's counsel's office informed him that they had already sent their documents for filing. Lamb attached copies of documents proving BRK had received plaintiffs' pretrial documents on April 10, 2015, and had acknowledged receiving them.

On April 20, 2015, BRK submitted Wolensky's declaration stating that the court docket in the Ventura case reflected a verdict was reached on March 26, 2015.

On April 21, 2015, Judge Feffer was engaged in another trial and ordered the parties to return on April 23, 2015. She decided to hear argument and rule on the motions in limine and the order to show cause, to assist the parties in their preparation for trial and help them provide more realistic time estimates. BRK's counsel also requested the court's indulgence on a particular date during trial, because one of BRK's attorneys needed to attend his daughter's graduation from law school in Philadelphia.

Argument was held on the order to show cause why Platero and Marroquin should not be precluded from introducing exhibits for failure to comply with local rules. The court noted that Stanley had represented to the court that plaintiffs' pretrial filings were untimely in part because he was engaged in a trial until April 3, 2015, but in fact, the trial concluded on March 27, 2015. The court found Stanley should have known when his trial finished, and he had an additional week for preparation for the present trial. Stanley apologized for his mistake with the dates and noted that Lamb handled the paperwork in the case. He mentioned that BRK had provided additional trial exhibits that very morning. BRK responded that the new exhibits were prepared in response to exhibits created by plaintiffs' experts.

Judge Feffer relied on Judge Hess's July 28, 2014 order stating that it was the fourth continuance and all parties had represented they would be available and ready on

9

the dates in April 2015. The court found that plaintiffs' attorneys were aware of the conflicts in their schedule when they represented that they would be ready for the final status conference on April 15, 2015, and the trial date on April 21, 2015. Lamb explained that the baby's due date was not known, because the baby had just been conceived. The court found plaintiffs' counsel were not ready for the final status conference on April 15, 2015, or the trial date. For those reasons, the court granted BRK's ex parte motion and precluded plaintiffs from presenting and admitting any exhibits at trial.

By ruling that no timely opposition was received, the court granted all of BRK's motions in limine, including the exclusion of Russell's and Lautenberger's testimony. Plaintiffs had filed two motions in limine, which were denied because they were not timely filed. The court ordered the parties to meet and confer on reasonable time estimates for the remaining witnesses who were not subject to the in limine rulings. The statement of the case, the instructions and a draft of the verdict would be finalized at the next hearing date. The court reiterated that there was no good cause for plaintiffs, represented by three attorneys, to have failed to be ready for the final status conference of April 15, 2015, or the trial date. The court denied BRK's ex parte application for terminating sanctions in connection with plaintiffs' failure to exchange trial exhibits.

Platero and Marroquin filed a request for relief under section 473, seeking to have the motions in limine heard on their merits. They filed an extensive offer of proof as to their experts' testimony. The court found the submission was not properly before the court and not timely. It was not presented as a noticed motion or an ex parte application. The plaintiffs were seeking reconsideration of the court's ruling on the motions in limine with no showing of exigent circumstances, excusable neglect, new facts, or new law. The court denied the application for relief.

On April 23, 2015, the trial court reiterated that the motions in limine were not heard on their merits and the court had granted the motions in limine because plaintiffs failed to file timely oppositions. The parties agreed that the plaintiffs could not prove their case without the expert testimony of Lautenberger or Russell, and therefore, the

10

parties stipulated that the trial court enter a judgment of nonsuit pursuant to section 581, subdivision (c), reserving their appellate rights. On June 8, 2015, the trial court entered judgment in favor of BRK pursuant to the stipulation.

Platero and Marroquin filed a timely notice of appeal from the June 8, 2015 judgment.

## DISCUSSION

Platero and Marroquin contend that the trial court abused its discretion by granting two motions in limine excluding the testimony of their expert witnesses and precluding plaintiffs from proving their case at trial solely because their oppositions to the motions were filed late. We agree.

"'Motions *in limine* are a commonly used tool of trial advocacy and management in both criminal and civil cases. Such motions are generally brought at the beginning of trial, although they may also be brought during trial when evidentiary issues are anticipated by the parties. In either event, they are argued by the parties, either orally or in writing or both, and ruled upon by the trial judge. The usual purpose of motions *in limine* is to preclude the presentation of evidence deemed inadmissible and prejudicial by the moving party. A typical order *in limine* excludes the challenged evidence and directs counsel, parties, and witnesses not to refer to the excluded matters during trial. (3 Witkin, Cal. Evidence [(3d ed. 1986)] § 2011 at p. 1969.) "The advantage of such motions is to avoid the obviously futile attempt to 'unring the bell' in the event a motion to strike is granted in the proceedings before the jury." [Citation.] [¶] Motions *in limine* serve other purposes as well. They permit more careful consideration of evidentiary issues than would take place in the heat of battle during trial. They minimize side-bar conferences and disruptions during trial, allowing for an uninterrupted flow of evidence. Finally, by resolving potentially critical issues at the outset, they enhance the efficiency of trials and promote settlements. [Citation.]' [Citation.]" (*Kelly v. New West Federal Savings* (1996) 49 Cal.App.4th 659, 669-670.)

11

"Trial courts are responsible for the monitoring of civil cases for the purpose of expediting them through the system. [Citations.]" (*Wantuch v. Davis* (1995) 32 Cal.App.4th 786, 794.) "In order to facilitate the expeditious processing of civil cases, parties may be sanctioned for failure to comply with delay-reduction rules or court orders. [Citations.] These sanctions may include terminating sanctions, such as the striking of pleadings. [Citation.]" (*Id.* at pp. 794-795.) "However, the delay-reduction rules and the policy of expeditious processing of civil cases do not override, in all situations, the trial court's obligation to hear cases on the merits. [Citations.] Preventing parties from presenting their cases on the merits is a drastic measure; terminating sanctions should only be ordered when there has been previous noncompliance with a rule or order and it appears a less severe sanction would not be effective. [Citations.] Terminating sanctions should not be ordered as a first response when noncompliance is through no fault of the party. [Citation.]" (*Id.* at p. 795.)

"Like many evidentiary rulings, orders on motions in limine are generally reviewed for abuse of discretion. [Citation.]" (*McMillin Companies, LLC v. American Safety Indemnity Co.* (2015) 233 Cal.App.4th 518, 530.)

In this case, the trial court had already found triable issues of fact existed and denied BRK's motion for summary judgment or summary adjudication. Attorney Lamb, who had the primary responsibility for preparing written responses to the motions in limine, was juggling childcare responsibilities with work obligations due to a new baby in his family, which was not anticipated when the trial court set the trial date in April 2015 and ordered that no further continuances would be considered. Platero and Marroquin prepared and filed late oppositions to the motions in limine, appeared for the final status conference, and announced they were ready for oral argument and for trial. This is not a case similar to those cited by BRK on appeal in which the plaintiffs agreed to the exclusion of evidence (cf. *Mangano v. Verity, Inc.* (2009) 179 Cal.App.4th 217, 221), or one where the plaintiffs failed to appear at the hearing or make any argument that the court should consider their untimely written opposition (cf. *Bell v. American Title Ins. Co.* (1991) 226 Cal.App.3d 1589, 1602). The trial court denied BRK's application for

12

terminating sanctions, but the order granting the motions in limine to exclude expert witness testimony in a product liability action was equivalent to a terminating sanction for the failure to file timely opposition. The order excluding plaintiffs' expert witness testimony, which effectively terminated plaintiffs' case, did not follow any noncompliance with a prior order or consideration of less severe sanctions. While the untimely filing of plaintiff's responses to the motions in limine was undoubtedly both inconvenient and burdensome to both BRK and the trial court, the harm flowing from the lack of diligence was not sufficient to warrant a terminating sanction. The trial court's ruling foreclosed the plaintiffs from pursuing their theory of liability and presenting their case. Under the circumstances of this case, it was an abuse of discretion to grant motions in limine terminating the plaintiffs' case based solely on their untimely opposition to motions in limine, when one of the motions in limine was itself filed late, there was no prejudice shown, and effective lesser sanctions were available.

This is not to say that counsel for plaintiffs should necessarily be absolved of responsibility for their conduct. The conduct of plaintiffs' counsel was unacceptable and disruptive of the orderly process of the court and a burden to BRK. Monetary sanctions against counsel for plaintiffs remain clearly within the discretion of the trial court. The appropriateness of other sanctions, short of sanctions effectively terminating the action, may also be considered by the court.

Russell and Lautenberger are qualified to provide expert testimony on certain topics. BRK's motions to limit or exclude particular testimony require discretionary rulings on evidentiary issues that are reserved to the trial court in the first instance. Therefore, the order granting the motions in limine must be reversed for the issues to be considered on their merits in the trial court.

## DISPOSITION

The judgment in favor of BRK Brands, Inc. and the order granting the motions in limine are reversed. The trial court is directed to consider the imposition of lesser

13

sanctions for the plaintiffs' untimely opposition to the motions and to consider the motions in limine on their merits.  The parties are to bear their own costs on appeal.


KRIEGLER, J.

We concur:


TURNER, P.J.


BAKER, J.

14